COWEN & COMPANY, Plaintiff,

v.

Dori MERRIAM, Jerome E. Rosen, Joseph D. Radcliffe and James A. Merriam, Defendants.

COWEN & COMPANY, Plaintiff,

v.

CIRCLE LAND & CATTLE CO., a Colorado Corporation, Jerome E. Rosen, Joseph D. Radcliffe and James A. Merriam, Defendants.

Nos. 88 Civ. 4406(RPP), 88 Civ. 4439(RPP).

United States District Court, S.D. New York.

Aug. 29, 1990.

Shanley & Fisher, P.C. by Matthew Farley, New York City, for plaintiff.

Abramovitz, Merriam & Matthews by Theodore H. Merriam, Denver, Colo., for defendant Circle Land & Cattle Co.

Berger & Kramer by Robert Goldstein, New York City, for defendant Circle Land & Cattle Co.

Finkelstein, Thompson & Loughran by Craig Kemmerer, Washington, D.C., for defendant Dori Merriam.

Mark Carton by Mark Carton, San Rafael, Cal., for defendant James A. Merriam.

David Cohen by David Cohen, New York City, for defendant Joseph E. Radcliffe.

Herbert Jacobi by Herbert Jacobi, New York City, for defendant Jerome E. Rosen.

## OPINION AND ORDER

ROBERT P. PATTERSON, Jr., District Judge.

This is an action brought by plaintiff, a registered securities broker-dealer, for damages arising out of stock transactions which occurred in October 1987. Plaintiff alleges that defendants have violated Sections 12(2) and 17 of the Securities Act of 1933, 15 U.S.C. §§ 77*l* and 77q, Sections 9(a) and 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78i(a) and j(b), and SEC Rule 10b–5, 17 C.F.R. § 240.10b–5 promulgated thereunder, as well as committed common law fraud and breach of contract. Defendant James Merriam now moves to dismiss counts seven through nine and counts fifteen through seventeen of the Consolidated and Second Amended Complaint for failure to state claims upon which relief can be granted pursuant to Fed.R.Civ.P. 12(b)(6) and for failure to plead fraud with particularity pursuant to Fed.R.Civ.P. 9(b).[1] Defendant Dori Merriam joins in the motion to dismiss count nine of the complaint and defendant Circle Land & Cattle Co. (hereinafter "Circle Land") joins in the motion to dismiss count

---

1. Plaintiff has since filed a Consolidated and Third Amended Complaint (hereinafter "the complaint") amending counts eight, nine, sixteen and seventeen. Plaintiff's amendment is as of right on counts eight and sixteen as they pertain to defendant James Merriam under Fed. R.Civ.P. 15(a) since defendant James Merriam has not yet filed an answer in the present action. However, the Court notes the objections of defendants Circle Land & Cattle Co. and Dori Merriam to plaintiff's amendment of counts nine and seventeen. Defendants are correct that since these counts seek relief jointly and severally from them and from James Merriam, and since both Circle Land and Dori Merriam have already filed answers in this action, plaintiff's amendment of counts nine and seventeen violated Rule 15(a) requiring leave of court for amendments after answer. The pending motions are thus considered in light of plaintiff's amended pleadings except on counts nine and seventeen. Further action is unnecessary in light of the Court's dismissal of those counts.

seventeen of the complaint, both pursuant to Rule 12(b)(6). For the reasons set forth below, defendants Dori Merriam's and Circle Land's motions are granted while defendant James Merriam's motion is denied on counts seven, eight, fifteen and sixteen but granted on counts nine and seventeen.

## BACKGROUND

For purposes of the motions to dismiss, the Court accepts the factual allegations contained in the complaint as true. *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Dwyer v. Regan*, 777 F.2d 825, 829 (2d Cir.1985), *modified on other grounds*, 793 F.2d 457 (2d Cir.1986). The facts are easily summarized as follows. Plaintiff, doing business as a registered securities broker-dealer, maintains accounts on its books for persons who desire to transact in securities. Prestige Investors, Inc. (hereinafter "Prestige"), a Colorado corporation, executed a clearing agreement with plaintiff dated June 3, 1986, whereby plaintiff was to act as a clearing broker for securities transactions by customers of Prestige. Defendants Dori Merriam and Circle Land were at all relevant times customers of Prestige and, by way of the clearing agreement, never had "front line" dealings with plaintiff. Instead, plaintiff dealt directly with defendant Jerome Rosen as the Prestige representative in charge of the two accounts. Defendant Joseph Radcliffe, as an officer, director and the majority stockholder of Prestige, allegedly supervised Rosen's handling of the two accounts.

Prestige was a market-maker in the shares of Vintage Group, Inc. (hereinafter "VGI"), an over-the-counter security, reporting bid and ask quotations in order to establish a market for such security. Defendant James Merriam is chairman, president and chief executive officer of VGI and defendant Dori Merriam, James' wife, owns more than 25% of the company's outstanding shares.

The complaint alleges that prior to September 1987, defendant James Merriam arranged for firms in addition to Prestige to act as market makers in VGI stock and pre-arranged transactions in VGI stock between different brokerage firms in order to bolster the price of VGI stock. Third Amended Complaint ¶ 54–55. Defendant James Merriam would then allegedly seek to sell off VGI shares owned by his wife Dori at the highest possible price. *Id.*

At the first sign of market-wide softening of stock prices in September 1987, a trend culminating in the October 1987 crash, defendant James Merriam allegedly devised a scheme to further manipulate the market price of VGI stock by creating a false appearance of demand for the stock. Merriam allegedly sought to preserve the stock's apparent trading volume by placing purchase orders for purchases of VGI stock with plaintiff through Prestige for the accounts of Circle Land & Cattle Company and Dori Merriam.

Between September 24 and October 7, 1987, James Merriam directed Prestige to place purchase orders with plaintiff for 453,000 shares of VGI common stock for defendant Circle Land's account at a total cost of $377,338.50. In reliance on Prestige's order and instructions, plaintiff credited and paid over to the Prestige account and debited the Circle Land account the same $377,338.50 in anticipation of full payment from Circle Land. Defendant Circle Land subsequently failed to pay plaintiff for the purchases.

Plaintiff thereafter sold the 453,00 shares of VGI stock on the open market, liquidated Circle Land's remaining positions in other VGI shares and applied the cash balance in Circle Land's account toward the cost of the purchases in issue. Plaintiff now claims that Circle Land owes a net sum of $231,326.31 as a result of the VGI stock purchases.

Similarly, between October 8 and 13, 1987, James Merriam directed Prestige to order purchases totalling 354,000 shares of VGI common stock for defendant Dori Merriam's account at a total cost of $265,-520.19. Plaintiff credited that amount to the Prestige account and charged Dori Merriam's account in anticipation of full payment from Dori Merriam, which was not forthcoming. Dori Merriam denies

that she authorized any of the purchases. Answer of Dori Merriam ¶ 8.[2]

Plaintiff subsequently sold the 354,000 shares of Vintage Group stock in the market, receiving $62,373.50 in total proceeds, which plaintiff credited to Dori Merriam's account. Plaintiff now sues for the net balance of $203,149.69 owed on the account.

Finally, defendant James Merriam allegedly further promoted his scheme by meeting with Prestige sales representatives in mid-October 1987 to induce sales of VGI stock to other investors and by offering them special cash incentives for sales of VGI stock. *Id.* ¶ 123. His alleged purpose in doing so was to unload long positions in VGI stock in the Circle Land and Dori Merriam accounts while the price remained at an artificially high level. *Id.*

Plaintiff initiated the present action to recover the unsecured debit balances in the brokerage accounts of defendants Dori Merriam and Circle Land & Cattle Co. maintained with plaintiff through Prestige. Plaintiff filed the original complaint in this action on June 22, 1988, naming Dori Merriam, Jerome Rosen, Joseph Radcliffe and Prestige Investors as defendants. Plaintiff amended its complaint on July 14, 1988, to omit Prestige Investors as a defendant upon learning that the brokerage firm had filed for bankruptcy. Circle Land & Cattle Co. was a defendant in a separate action against Circle Land, Rosen, Radcliffe and James Merriam which was consolidated with the present action on December 11, 1989.

## DISCUSSION

### BREACH OF CONTRACT CLAIMS

Defendant James Merriam moves to dismiss counts seven and fifteen of the complaint which allege breach of contract for failure to pay for purchases of VGI stock for the Dori Merriam and Circle Land accounts. Allegations in the complaint, which for the purposes of this motion the Court presumes to be true, state that James Merriam was expressly authorized by defendant Dori Merriam to effectuate transactions in her account and that he frequently placed orders for the Circle Land account as well. Third Amended Complaint ¶¶ 43, 104. In essence it is claimed that James Merriam was acting as an agent for Dori Merriam and Circle Land when he directed the VGI stock purchases for those accounts in September and October, 1987.

■ It is well-settled in the law of agency that an agent making or purporting to make a contract with another for a disclosed principal does not become liable on the contract absent a clearly manifested intent to bind the agent instead of or in addition to the principal. *Dow Chemical Pacific Ltd. v. Rascator Maritime S.A.*, 782 F.2d 329, 339 (2d Cir.1986); *Owen Steel Co. v. George A. Fuller Co.*, 563 F.Supp. 298, 300 (S.D.N.Y.1983); *Levy v. David C. Gold & Co., Real Estate, Inc.*, 141 A.D.2d 511, 529 N.Y.S.2d 133 (1988), *appeal denied*, 73 N.Y.2d 704, 537 N.Y.S.2d 492, 534 N.E.2d 330 (1989). An agent for a disclosed principal may however become liable where there is evidence that fraud is involved. *Trenga Realty v. Tiseo*, 117 A.D.2d 951, 499 N.Y.S.2d 262, 263–64 (1986). Fraud in this context typically arises when the agent is acting on his own behalf as well as an agent for the principal. *See Dow Chemical Pacific*, 782 F.2d at 340; *Bakerian v. H.F. Horn & Erectors, Inc.*, 21 A.D.2d 714, 249 N.Y.S.2d 646, 648 (1964); *Weidman v. Klot*, 11 A.D.2d 641, 201 N.Y.S.2d 476, 477, *appeal denied*, 8 N.Y.2d 710, 208 N.Y.S.2d 1026, 170 N.E.2d 834 (1960).

■ Plaintiff has alleged that defendant James Merriam contrived a fraudulent scheme to manipulate the market price of VGI stock by making purchases of the stock on the Dori Merriam and Circle Land accounts in order to create a false appearance of investor interest. As president, chairman and CEO of VGI, Merriam had a

---

**2.** Defendant Dori Merriam further claims that defendants Rosen and Radcliffe of Prestige understood that she had authorized her husband to make only sales transactions on her account with Prestige, but not purchase transactions of the type in issue. *Id.* ¶ 32.

personal interest in creating an artificial market for the stock of his company. The complaint alleges that his purpose in doing so was to recover a profit by selling VGI stock owned by his wife at the elevated prices his spurious activities had generated. Even if Merriam made the September and October stock purchases as an agent, counts seven and fifteen state a breach of contract claim sufficient to withstand a 12(b)(6) motion to dismiss because an agent may not use the agency relationship to shield himself from liability to a third party for wrongful acts he personally committed not as an agent but as a principal acting on his own behalf. *Estate of Pausner,* 104 Misc.2d 652, 428 N.Y.S.2d 815 (Sur.Ct. 1980). Accordingly, defendant James Merriam's motion to dismiss counts seven and fifteen is denied.

## SECTION 10(B) CLAIMS

Defendant James Merriam moves to dismiss counts eight and sixteen of the complaint charging him with violating § 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j, and Rule 10b–5 promulgated thereunder, 17 C.F.R. § 240.10b–5, on the ground that the second amended complaint fails state a claim upon which relief can be granted and fails to plead fraud with particularity in accordance with the requirements of Rule 9(b). Defendant's motion will be considered in light of the allegations in plaintiff's third amended complaint, submitted May 4, 1990, after the issues in the pending motion had been fully briefed.

■ Rule 9(b) serves three purposes: first, to assure a defendant of fair notice of the nature of plaintiff's claim and the ground upon which it rests; second, to protect a defendant from the harm that would befall its goodwill when it is charged with serious wrongdoing; and third, to diminish the possibility that a plaintiff with a largely groundless claim will be able to use the threat of extensive discovery to impose an in terrorem increase on a settlement value. *Ross v. A.H. Robins Co.,* 607 F.2d 545, 557 (2d Cir.1979), *cert. denied,* 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802

(1980), *reh'g denied,* 448 U.S. 911, 100 S.Ct. 3057, 65 L.Ed.2d 1140 (1980). However, the rule requires no more than that the complaint give "each defendant notice of precisely what he is charged with." *Goldman v. Belden,* 754 F.2d 1059, 1070 (2d Cir.1985).

Section 10(b) makes it "unlawful for any person ... to use or employ ... any manipulative or deceptive device or contrivance in contravention of" Securities and Exchange Commission rules. The proscribed manipulation "refers generally to practices ... that are intended to mislead investors by artificially affecting market activity." *Santa Fe Indus. v. Green,* 430 U.S. 462, 476, 97 S.Ct. 1292, 1302, 51 L.Ed.2d 480 (1977). Rule 10b–5 prohibits any "artifice to defraud" or any act "which operates or would operate as a fraud or deceit" in connection with the purchase or sale of a security.

■ The elements of a claim for damages under these provisions are (1) damage to plaintiff, (2) caused by reliance on defendant's misrepresentations or omissions of material facts, or on a scheme by defendant to defraud, (3) scienter, (4) in connection with the purchase or sale of securities, (5) furthered by defendant's use of the mails or any facility of a national securities exchange. *Bochicchio v. Smith Barney, Harris Upham & Co.,* 647 F.Supp. 1426, 1429 (S.D.N.Y.1986).

■ Plaintiff complains that defendant acted fraudulently by directing a series of purchases of VGI stock for his wife's and Circle Land's accounts in order to create the appearance of demand for the stock at a time when the price of the stock was generally declining. Counts eight and sixteen of the third amended complaint detail defendant's pre-purchase efforts to promote the sale of VGI stock as well as the date, quantity and price of each purchase in furtherance of the market manipulation scheme. These acts clearly charge defendant James Merriam with an attempt at "artificially affecting market activity in order to mislead investors," *Santa Fe Indus.,* 430 U.S. at 477, 97 S.Ct. at 1303, and with enough specificity to meet the require-

ments of Rule 9(b). *See Kempner v. Oppenheimer & Co.*, 662 F.Supp. 1271, 1282 (S.D.N.Y.1987) (pleading specified the allegedly wrongful conduct and identified the transactions in question and the securities involved); *Ross v. Bolton*, 639 F.Supp. 323, 326 (S.D.N.Y.1986) (complaint sufficiently alleged scheme to produce artificial increase in stock price and cited specific examples of the scheme); *Rooney Pace, Inc. v. Reid*, 605 F.Supp. 158, 162 (S.D.N.Y. 1985) (complaint sufficiently alleged acts by defendant in connection with scheme to create an appearance of active trading).

Furthermore, plaintiff's claim survives the motion to dismiss under Rule 12(b)(6) because the complaint alleges facts in support of each of the elements required by § 10(b) and Rule 10b–5. Plaintiff claims it was damaged by purchasing VGI stock for the accounts of Dori Merriam and Circle Land in reliance upon orders placed through Prestige at the request of defendant James Merriam in furtherance of his scheme to manipulate the price of the stock. The allegations concern the purchase of securities accomplished through the use of the mails. Finally, plaintiff has met the scienter requirement by pleading facts which "give rise to a strong inference," *see Ross v. A.H. Robins Co.*, 607 F.2d at 558, that defendant James Merriam had an intent to defraud, including his various efforts to promote sale of VGI stock in order to raise its price so that he could make profitable sales of the very same stock owned by his wife. See also *Seagoing Uniform Corp. v. Texaco, Inc.*, 705 F.Supp. 918, 930 (S.D.N.Y.1989); *Lazzaro v. Manber*, 701 F.Supp. 353, 363 (E.D.N.Y. 1988) (scienter alleged where complaint detailed "relationships among the various defendants and the companies whose stocks they or their agents were promoting, as well as the financial status of these companies"). Accordingly, defendant James Merriam's motion to dismiss counts eight and sixteen is denied.

## SECTION 9(A) CLAIMS

■ All three moving defendants seek to dismiss counts nine and seventeen of the complaint charging violation of § 9(a) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78i(a), for failure to state a claim upon which relief can be granted. Section 9 prohibits *inter alia*, transactions "[f]or the purpose of creating a false or misleading appearance of active trading in any security registered on a *national securities exchange*," *id.* § 78i(a)(1) (emphasis added), and any "series of transactions in any security registered on a *national securities exchange* creating actual or apparent active trading in such security," *id.* § 78i(a)(2) (emphasis added). *See also, Rooney Pace, Inc. v. Reid*, 605 F.Supp. 158, 163 (S.D.N.Y.1985). Defendants assert that the National Association of Securities Dealers Automated Quotation System ("NASDAQ") over which VGI stock is traded is not a "national securities exchange" within the meaning of § 9. Defendants seek to distinguish over-the-counter markets like NASDAQ from national securities exchanges under the Act.

Section 9 does not explicitly define the term "national securities exchange." Section 3, however, defines the term "exchange" as:

... any organization, association, or group of persons, whether incorporated or unincorporated, which constitutes, maintains, or provides a marketplace or facilities for bringing together purchasers and sellers of securities or for otherwise performing the functions commonly performed by a stock exchange as that term is generally understood, and includes the marketplace and market facilities maintained by such exchange.

15 U.S.C. § 78c(a)(1). Plaintiff argues that NASDAQ is an "association" which brings purchasers and sellers together and that the over-the-counter markets and NASDAQ together constitute "the marketplace and market facilities maintained by" the NASD. However, the broader statutory scheme, combined with a small body of caselaw, reflect an intent to distinguish between "associations" and "exchanges." For example, section 6(a) of the '34 Act governs registration of national securities exchanges while section 15 governs registration of national securities associations. This distinction must form the backdrop for

any reading of section 9 whose anti-manipulation provisions apply only to securities "registered on a national securities exchange." 15 U.S.C. § 78i(a).

The court in *Dorfman v. First Boston Corp.*, 336 F.Supp. 1089, 1097 (E.D.Pa. 1972), drew a similar distinction. In *Dorfman*, the complaint alleged a violation of § 9(a)(4) based on misstatements contained in the offering circular for railroad bonds. The court dismissed this claim because the bonds were issued on the over-the-counter market subject to the provisions of § 15 rather than on a national securities exchange registered under § 6(a). Plaintiff attempts to distinguish *Dorfman* by limiting its rule to "bonds traded loosely between firms" rather than applying to the broader category of securities or stocks of the type traded on NASDAQ. Pl. Br. at 18. Yet the court in *Gavron v. Blinder Robinson & Co.*, 115 F.R.D. 318, 320 n. 3 (E.D.Pa.1987), a case involving common stock rather than bonds, also found that plaintiff failed to state a claim for relief under § 9 because "plaintiff concedes that ... the NASDAQ over-the-counter market is not considered to be a 'national securities exchange' within the meaning of Section 9 of the Exchange Act."

Plaintiff also argues that to adjudge NASDAQ as beyond the reaches of § 9 would deny the Act's anti-manipulation protection to a significant portion of the securities market. Transactions on NASDAQ account for nearly 40% of all shares traded in the United States in 1989 and nearly 20% measured in dollar volume. NASDAQ 1989 Fact Book (1989). Plaintiff's fears are unfounded. In *SEC v. D'Onofrio et al.*, Fed.Sec.L.Rep. (CCH) ¶ 95,201 1975 WL 393 (S.D.N.Y. June 3, 1975), the Securities and Exchange Commission successfully brought an enforcement action under § 10(b) and Rule 10b–5 essentially alleging the use of manipulative devices of the type prohibited by § 9:

> The main thrust of the Commission's claim is defendants' alleged violation of the antifraud provisions through manipulative practices in connection with the purchase and sale of Galco shares *in the over-the-counter markets.* While sec-

tion 10b and Rule 10b–5 promulgated thereunder proscribe a broad range of manipulative devices, ... the Exchange Act contains a more detailed prohibition in section 9. The Commission's allegations are couched in terms of manipulative devices of the type described in section 9(a)(2), *which is limited, however, in its jurisdictional effect to securities listed on a national securities exchange.*

*Id.* (emphasis added). Thus the court in *D'Onofrio*, recognizing the inherent limitations of § 9 of the '34 Act, extended § 9's anti-manipulation protection to over-the-counter trading through the vehicle of a traditional antifraud claim under § 10(b). *Id.* ("[T]he court concludes that defendants have manipulated Galco common stock within the meaning of § 9(a)(2), and therefore, violated § 10(b) of the Exchange Act, Rule 10b–5 thereunder, and § 17(a) of the Securities Act.").

Accordingly, counts nine and seventeen of the complaint are dismissed because the Court finds that NASDAQ is not a "national securities exchange" within the meaning of § 9(a) of the Securities and Exchange Act of 1934, 15 U.S.C. § 78i(a). If defendants are found to have unlawfully manipulated the market for VGI stock traded on NASDAQ, these violations are redressable by plaintiff's § 10(b) claims in counts eight and sixteen of the complaint.

## CONCLUSION

In conclusion, defendant James Merriam's motion to dismiss counts seven, eight, fifteen and sixteen of the third amended complaint is denied. The motions of defendants James Merriam, Dori Merriam and Circle Land and Cattle Co. to dismiss counts nine and seventeen are granted.

SO ORDERED.