**Elizabeth Freeman CONNOLLY and SMC Trading Co., Plaintiffs,**

**v.**

**Anthony HAVENS, Peter Aiello, Ernest Barbella, Joel S. Nadell, Richard Owen Bertoli, Joseph Lugo, Carl Caserta and Securities Settlement Corporation, Defendants.**

**No. 90 Civ. 6451 (PKL).**

United States District Court, S.D. New York.

April 23, 1991.

Wolf, Popper, Ross, Wolf & Jones (Klari Neuwelt, of counsel), New York City, for plaintiffs.

Kirkland & Ellis (J. Andrew Langan, Thomas E. Dutton, of counsel), Chicago, Ill. (Richard F. Levy, James H. Gale, of counsel), New York City, for defendant Securities Settlement Corp.

Schoeman, Marsh & Updike (Michael E. Schoeman, Scott M. Riemer, of counsel), New York City, for defendant Joel S. Nadel.

## ORDER AND OPINION

LEISURE, District Judge:

This is a class action for violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961 et seq. ("RICO"), and for violations of § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) (the "1934 Act"), and Rule 10b–5 promulgated thereunder, and § 9(a) of the 1934 Act. Each defendant is named in each of the five claims in the complaint. Defendant Securities Settlement Corporation ("SSC") and defendant Joel S. Nadel[1] ("Nadel") (collectively referred to herein as "the Moving Defendants"), have separately moved on similar grounds, pursuant to Fed. R.Civ.P. 12(b)(6) and Fed.R.Civ.P. 9(b), for dismissal of the complaint in this action. For the reasons discussed below, the motions of the Moving Defendants are granted.

### Background[2]

The plaintiffs in this action are Elizabeth Freeman Connolly ("Connolly") and SMC Trading Company, a partnership in which Connolly was a general partner. Complaint ¶¶ 12, 13. The complaint names seven individuals as defendants (the "Individual Defendants"), as well as SSC. Plaintiffs aver that they maintained securities trading accounts with Equities International Securities ("Equities"), and sue on behalf of a class consisting of similar customers of Equities who, like themselves, allegedly sustained losses in their accounts as the result of unauthorized trades and securities fraud. Complaint ¶¶ 5, 12, 13. More specifically, plaintiffs allege that during 1987 and 1988 the Individual Defendants conducted a scheme to defraud plaintiffs by using Equities

as a vehicle to manipulate the prices of various securities, to sell unregistered securities, to underwrite the initial public offerings of securities in which the individual defendants had or gained an interest, to engage in unauthorized purchases and sales from the accounts of customers of [Equities], to park securities in the accounts of customers of [Equities] in order to give [Equities] the appearance of solvency and of a legitimate business enterprise, all to the benefit of the indi-

---

1. Sued herein as "Joel S. Nadell."

2. The Court will not consider the numerous factual allegations set forth for the first time in plaintiffs' memorandum opposing the instant motions. It is a basic principle that a complaint may not be amended by the plaintiff's brief filed in opposition to a motion to dismiss. *See Hartford Fire Insurance Co. v. Federated Department Stores, Inc.,* 723 F.Supp. 976, 987 (S.D.N.Y. 1989); *O'Brien v. National Property Analysts Partners,* 719 F.Supp. 222, 229 (S.D.N.Y.1989).

vidual defendants herein. [SSC] aided and abetted these activities. Complaint ¶ 23.

Defendant SSC is alleged to have acted as Equities's clearing house during the relevant time period, Complaint ¶ 24, and to have "indicated" that it was the broker of record with respect to two securities. Complaint ¶¶ 65, 75. It is alleged that because SSC acted as Equities's clearing house, it "knew, or in the exercise of reasonable diligence should have known," of the illegal activities of Equities and the other defendants. Complaint ¶¶ 24, 34, 40, 46, 51, 57, 65, 70, 75, 79. Defendant Nadel is alleged to have owned manipulated securities, Complaint ¶ 31, and to have owned or controlled "a number of" publications that give advice on securities to the public. Complaint ¶ 63. It is also alleged that Equities paid Nadel $6,000 to use his publications to tout the stock for which Equities was the underwriter, and that Nadel did so without disclosing that fact. Complaint ¶ 63. Finally, it is alleged that Nadel voluntarily agreed to leave the securities industry under pressure from the Securities and Exchange Commission, a fact not disclosed to the public or to plaintiffs. Complaint ¶ 35.

*Discussion*

"The court's function on a Rule 12(b)(6) motion is not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Festa v. Local 3 International Brotherhood of Electrical Workers,* 905 F.2d 35, 37 (2d Cir.1990); *see also Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc.,* 748 F.2d 774, 779 (2d Cir.1984) ("The function of a motion to dismiss 'is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.' " (quoting *Geisler v. Petrocelli,* 616 F.2d 636, 639 (2d Cir.1980))).

Thus, a motion to dismiss must be denied "unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974) (*citing Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)); *see also Morales v. New York State Dep't of Corrections,* 842 F.2d 27, 30 (2d Cir.1988). In deciding a motion to dismiss, the Court must accept the plaintiff's allegations of fact as true, together with such reasonable inferences as may be drawn in his favor. *Papasan v. Allain,* 478 U.S. 265, 283, 106 S.Ct. 2932, 2934, 92 L.Ed.2d 209 (1986); *Murray v. Milford,* 380 F.2d 468, 470 (2d Cir.1967); *Hill v. Sullivan,* 125 F.R.D. 86, 90 (S.D.N.Y.1989) ("all allegations in plaintiffs' amended complaint must be accepted as true and liberally construed."); *see also Scheuer, supra,* 416 U.S. at 236, 94 S.Ct. at 1686. Federal Rule of Civil Procedure 8(a) requires only a " 'short and plain statement of the claim' that will give the defendant fair notice of what plaintiff's claim is and the ground upon which it rests." *Conley, supra,* 355 U.S. at 47, 78 S.Ct. at 103 (quoting Fed.R. Civ.P. 8(a)).

Nevertheless, "the complaint must set forth enough information to suggest that relief would be based on some recognized legal theory." *Fort Wayne Telsat v. Entertainment and Sports Programming Network,* 753 F.Supp. 109, 111 (S.D.N.Y. 1990) (Leisure, J.). "The District Court has no obligation to create, unaided by plaintiff, new legal theories to support a complaint." *District of Columbia v. Air Florida, Inc.,* 750 F.2d 1077, 1081–82 (D.C.Cir. 1984). "In practice 'a complaint ... must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under *some* viable legal theory.' " *Car Carriers, Inc. v. Ford Motor Co.,* 745 F.2d 1101, 1106 (7th Cir.1984) (quoting *Sutliff, Inc. v. Donovan Cos.,* 727 F.2d 648, 654 (7th Cir.1984) (Posner, J.) (emphasis in original) (quoting *French Quarter Apartments Ltd. v. Georgia–Pacific Corp.,* 655 F.2d 627, 641 (5th Cir.1981), *cert. dism'd,* 462 U.S. 1125, 103 S.Ct. 3100, 77 L.Ed.2d 1358 (1983))), *cert. denied,* 470 U.S. 1054, 105 S.Ct. 1758, 84 L.Ed.2d 821 (1985).

Having set forth the standards for evaluating motions under Rule 12(b)(6), the Court now addresses the sufficiency of plaintiffs' claims. Those claims will be discussed in logical, rather than numerical order.

## I. Fourth Claim: Section 10(b) and Rule 10b–5

### A) Primary Violations

■ To state a claim for primary liability under § 10(b) and Rule 10b–5, a plaintiff must allege 1) damage to plaintiff; 2) caused by reliance on the defendant's misrepresentations or omissions of material facts, or on a scheme by defendant to defraud; 3) made with scienter; 4) in connection with the purchase or sale of securities; 5) promulgated through the use of the mails, an instrument of interstate commerce, or a securities exchange facility. *See Royal American Managers, Inc. v. IRC Holding Corp.*, 885 F.2d 1011, 1015 (2d Cir.1989); *Goodridge v. Harvey Group Inc.*, 728 F.Supp. 275, 280 (S.D.N.Y.1990).

■ With respect to SSC, there is no specific allegation that it directly violated § 10(b) and Rule 10b–5; indeed, ¶ 23 of the complaint clearly states that the Individual Defendants engaged in the scheme to manipulate securities prices, and that SSC "aided and abetted these activities." Complaint ¶ 23. Moreover, even if plaintiffs have attempted to allege primary violations by SSC, such a claim must fail. It is well-established that a clearing firm, such as SSC, does not have a fiduciary relationship with the customers—such as plaintiffs herein—of the introducing broker with which it has contracted to perform clearing services. *See Edwards & Hanly v. Wells Fargo Securities Clearance Corp.*, 602 F.2d 478, 484 (2d Cir.1979) ("a clearing agent ... is generally under no fiduciary duty to the owners of the securities that pass through its hands."), *cert. denied*, 444 U.S. 1045, 100 S.Ct. 734, 62 L.Ed.2d 731 (1980); *Dillon v. Militano*, 731 F.Supp.

634, 636 (S.D.N.Y.1990); *Stander v. Financial Clearing & Services Corp.*, 730 F.Supp. 1282, 1286 (S.D.N.Y.1990) (Leisure, J.); *Ross v. Bolton*, 639 F.Supp. 323, 326–27 (S.D.N.Y.1986). The services that SSC allegedly performed for Equities were ordinary clearing house functions. The allegation, without more, that SSC was also allegedly "responsible for compliance with securities laws and regulations" by Equities, without any allegation or legal authority that SSC owed any such duty to the plaintiffs, cannot create a fiduciary duty where none existed.[3]

Plaintiffs have not alleged any false or misleading statements by SSC. Because plaintiffs have not adequately alleged a fiduciary relationship between SSC and themselves, SSC owed plaintiffs no duty of disclosure, *see Chiarella v. United States*, 445 U.S. 222, 232, 100 S.Ct. 1108, 1116–17, 63 L.Ed.2d 348 (1980), and "[s]ilence, absent a duty to disclose, is not misleading under Rule 10b–5." *Basic Inc. v. Levinson*, 485 U.S. 224, 239 n. 17, 108 S.Ct. 978, 987 n. 17, 99 L.Ed.2d 194 (1988). Accordingly, in similar cases courts have consistently held that clearing firms cannot be primarily liable under Rule 10b–5 for nondisclosure because such firms generally have no duty to disclose. *See, e.g., Dillon, supra*, 731 F.Supp. at 636; *Ross v. Bolton*, 1989 WL 80428, 1989 U.S.Dist. LEXIS 7704 (S.D.N.Y.1989). Thus, plaintiffs have failed to state a claim for a primary violation of § 10(b) and Rule 10b–5 by SSC.

■ With respect to Nadel, it is alleged that he participated in the manipulation of the securities of two companies, Holistic Services, Inc. ("Holistic") and Recognition Technologies, Inc. ("Recognition"). In the case of Holistic, there is no allegation that Nadel made any false or misleading statements; rather, it is alleged that he did not disclose his voluntary agreement to leave the securities industry to the public or plaintiffs. Complaint ¶ 35. Likewise, in the case of Recognition, it is merely alleged

---

**3.** The sole case cited by plaintiffs, *Epstein v. Haas Securities Corp.*, 731 F.Supp. 1166 (S.D.N.Y.1990), is distinguishable from the case at bar. In *Epstein*, plaintiffs specifically alleged that

defendant, the compliance director of a securities firm, owed them a duty of care. *Epstein, supra*, 731 F.Supp. at 1176–77.

that Nadel did not disclose the fact that he was paid $6,000 to recommend Recognition stock. However, in both instances there is no allegation that Nadel owed any duty of disclosure to plaintiffs; no allegation of materiality; no allegation of facts from which an inference of scienter can be drawn; no allegation that the omission was "in connection with" the purchase or sale of a security; no allegation that plaintiffs were damaged by the omission; and no allegation of the use of jurisdictional means. Therefore, plaintiffs have also failed to state a claim for a primary violation of § 10(b) and Rule 10b–5 by Nadel.

### B) Aiding and Abetting

██ In order to state an aiding and abetting claim under § 10(b) and Rule 10b–5, a plaintiff must allege "in addition to the securities law violation by the primary wrongdoer, that [the defendant] knew of the wrong and substantially assisted in perpetrating it." *Ross v. Bolton*, 904 F.2d 819, 824 (2d Cir.1990). Where, as here, there is no fiduciary duty, "the *scienter* requirement increases, so that [plaintiffs] need to show that [defendant] acted with actual intent." *Ross, supra*, 904 F.2d at 824; *see also Stander, supra*, 730 F.Supp. at 1286 ("Where there is no fiduciary duty, plaintiffs must allege actual knowledge of the fraudulent activity.").

██ With respect to SSC, "[i]t is clear that the simple providing of normal clearing services to a primary broker who is acting in violation of the law does not make out a case of aiding and abetting against the clearing broker." *Stander, supra*, 730 F.Supp. at 1286 (citing *Baum v. Phillips, Appel & Walden, Inc.*, 648 F.Supp. 1518 (S.D.N.Y.1986), *aff'd*, 867 F.2d 776 (2d Cir.), *cert. denied*, —— U.S. ——, 110 S.Ct. 114, 107 L.Ed.2d 75 (1989)). The complaint alleges at most recklessness on the part of SSC, and not actual knowledge, and thus plaintiffs have failed to plead scienter adequately. *See Ross, supra*, 904 F.2d at 824 (absent a fiduciary duty, allegations of recklessness insufficient to plead aiding and abetting violation). In addition, absent a fiduciary duty between a clearing broker

and the introducing broker's customers, the clearing broker's failure to disclose cannot constitute the requisite "substantial assistance." *See IIT, International Investment Trust v. Cornfeld*, 619 F.2d 909, 927 (2d Cir.1980); *Dillon, supra*, 731 F.Supp. at 639 ("SSC owed no compensable duty to the investors and the inaction of a clearing broker is not enough to constitute the 'substantial assistance' that aiding and abetting liability requires."). Thus, plaintiffs have failed to plead adequately that element of aiding and abetting as well. Accordingly, SSC's motion to dismiss the fourth claim of the complaint is granted.

██ With respect to Nadel, it appears that the complaint attempts to allege an aiding and abetting claim in connection with the underwriting and "hyping" of the Recognition securities. Complaint ¶ 63. However, there is no allegation that Nadel owed any fiduciary duty to plaintiffs, that Nadel knew (or even that Nadel should have known) of the primary wrongdoers' actions, or that Nadel's publication of a recommendation of Recognition stock substantially assisted the primary wrong. Therefore, plaintiffs have failed to make out an aiding and abetting claim under § 10(b) and Rule 10b–5, *see Ross, supra*, 904 F.2d at 824, and thus Nadel's motion to dismiss the fourth claim is granted.

### II. Fifth Claim: Section 9(a)

██ To state a claim under § 9(a) of the 1934 Act, a plaintiff must plead that

"(1) a series of transactions in a security creating actual or apparent trading in that security *or* raising or depressing the price of that security, (2) carried out with scienter (3) for the purpose of inducing the security's sale or purchase by others, (4) was relied on by the plaintiff, (5) and affected *plaintiff's* purchase or selling price."

*Baum, supra*, 648 F.Supp. at 1530 (quoting *Chemetron Corp. v. Business Funds, Inc.*, 682 F.2d 1149, 1164 (5th Cir.1982), *vacated on other grounds*, 460 U.S. 1007, 103 S.Ct. 1245, 75 L.Ed.2d 476 (1983)) (emphasis in original). For the reasons discussed above, plaintiffs have failed to allege adequately

**12**

that either of the Moving Defendants acted with scienter. For that reason alone, plaintiffs' § 9(a) claim is deficient.

Moreover, § 9(a) only addresses the manipulation of securities "registered on a national securities exchange," 15 U.S.C. § 78i(a), and thus plaintiffs must allege such registration of the securities at issue. *See Cowen & Co. v. Merriam*, 745 F.Supp. 925, 930–31 (S.D.N.Y.1990); *Dorfman v. First Boston Corp.*, 336 F.Supp. 1089, 1096–97 (E.D.Pa.1972).[4] Plaintiffs have made no such allegation. Therefore, plaintiffs' fifth claim must be dismissed on that ground as well.

### III. First and Second Claims: RICO Substantive Claims

▆ Plaintiffs' first and second claims are for violations of 18 U.S.C. §§ 1962(b) and 1962(c), respectively.[5] In order to state a claim for a violation of RICO, a plaintiff must allege, *inter alia*, a "pattern of racketeering activity," which, by definition, requires the averment of at least two predicate racketeering acts within a ten-year period. 18 U.S.C. § 1961(5). In the complaint in the case at bar, plaintiffs allege that the Moving Defendants committed RICO predicate acts of securities fraud, mail fraud, and wire fraud. Complaint ¶ 87. As discussed in detail above, plaintiffs have failed to allege adequately any securities fraud violations by the Moving Defendants, under the pleading standard of Fed.R.Civ.P. 12(b)(6). As for plaintiffs' allegations of predicate acts of mail and wire fraud, those allegations are so deficient under Fed.R.Civ.P. 9(b) as to demand dismissal under that rule. "Rule 9(b)'s requirements 'apply with equal force to allegations of mail and wire fraud as predicate RICO civil offenses.'" *McCoy v. Goldberg*, 748 F.Supp. 146, 156 (S.D.N.Y.

1990) (quoting *Rich–Taubman Associates v. Stamford Restaurant Operating Co.*, 587 F.Supp. 875 (S.D.N.Y.1984)).

▆ Rule 9(b) states: "In all averments of fraud or mistake, the circumstances constituting the fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." Fed.R.Civ.P. 9(b). In a motion to dismiss a complaint pursuant to Rule 9(b), as in a motion under Rule 12(b), a plaintiff's allegations must be taken as true. *See Luce v. Edelstein*, 802 F.2d 49, 52 (2d Cir.1986). The complaint's fraud allegations must be specific enough to allow the defendant "a reasonable opportunity to answer the complaint" and must give "adequate information" to allow the defendant "to frame a response." *Ross v. A.H. Robins, Co.*, 607 F.2d 545, 557–58 (2d Cir.1979), *cert. denied*, 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802 (1980). Rule 9(b) is designed to provide a defendant fair notice of a plaintiff's claim, in order to enable the defendant to prepare a defense, protect the defendant's reputation or goodwill from harm, and reduce the number of strike suits. *DiVittorio v. Equidyne Extractive Industries, Inc.*, 822 F.2d 1242, 1247 (2d Cir.1987). Rule 9(b) must be read, however, in conjunction with Rule 8(a), which requires a plaintiff to plead only a short, plain statement upon which he is entitled to relief. *Ross, supra*, 607 F.2d at 557 n. 20.

▆ Nonetheless, "fraud allegations ought to specify the time, place, speaker, and content of the alleged misrepresentations. Where multiple defendants are asked to respond to allegations of fraud, the complaint shall inform each defendant of the nature of his alleged participation in the fraud." *DiVittorio, supra*, 822 F.2d at

---

**4.** The Court agrees with Judge Patterson's finding in *Cowen, supra*, that the National Association of Securities Dealers Automated Quotation System ("NASDAQ"), is not a "national securities exchange" within the meaning of § 9.

**5.** Section 1962(b) makes it unlawful "for any person through a pattern of racketeering activity ... to acquire or maintain, directly or indirectly, any interest in or control of any enter-

prise which is engaged in, or the activities of which affect, interstate or foreign commerce." Section 1962(c) makes it unlawful "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity."

1247 (citations omitted). Furthermore, the complaint should also set forth the manner in which the plaintiff was misled, and what the defendants obtained as a result of the fraud. *Stander v. Financial Clearing & Services Corp.*, 718 F.Supp. 1204, 1209 (S.D.N.Y.1989) (citations omitted). In addition, "[a]lthough scienter need not be alleged with great specificity, plaintiffs are still required to plead the factual basis which gives rise to a 'strong inference' of fraudulent intent." *Wexner v. First Manhattan Co.*, 902 F.2d 169, 172 (2d Cir.1990) (quoting *Beck v. Manufacturers Hanover Trust Co.*, 820 F.2d 46, 50 (2d Cir.1987), *cert. denied*, 484 U.S. 1005, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988)).

▮ "In alleging mail fraud, the plaintiff must set forth the contents of the items mailed and specify how each of the items was false and misleading." *Official Publications, Inc. v. Kable News Co., Inc.*, 692 F.Supp. 239, 245 (S.D.N.Y.1988), *aff'd in part, rev'd in part on other grounds*, 884 F.2d 664 (2d Cir.1989). This requirement of particularity in mail fraud pleadings does not require a plaintiff to plead every date and place of mailing, particularly where such knowledge would be in possession of defendants. But it does require that the documents involved be pled with particularity, and, where there are multiple defendants, that connections be made between the various defendants and the alleged acts of mail fraud. The same analysis applies to wire fraud pleadings. *See McCoy, supra*, 748 F.Supp. at 156 (quoting *Radionic Industries, Inc. v. GTE Products Corp.*, 665 F.Supp. 622, 625 (N.D.Ill.1987)).

In the case at bar, plaintiffs' allegations with respect to the Moving Defendants fall far short of the particularity required by Rule 9(b). With respect to SSC, the complaint does not specify the time or place of any misrepresentations, nor does it specify what SSC obtained as a consequence of its allegedly fraudulent activity. Moreover, the complaint merely alleges that SSC "knew or should have known" of the Individual Defendants' activities, and contains no factual allegations that would allow this Court to draw the "strong inference" of fraudulent intent required under Rule 9(b). *See Wexner, supra*, 902 F.2d at 172.

With respect to Nadel, the complaint is likewise deficient. The allegations pertaining to the manipulation of Holistic fail to specify what fraudulent acts Nadel performed, when they were performed, the number or percentage of Holistic shares Nadel acquired, whether the U.S. mails or interstate telephone lines were used, the connection, if any, between Nadel's alleged agreement to leave the securities industry and the injuries plaintiffs suffered, and what Nadel gained by his actions. Complaint ¶¶ 31, 35. Similar deficiencies are found in the allegations relating to the Recognition manipulation. The complaint fails to aver who paid Nadel the money to tout Recognition, when the money was paid, the nature of the recommendations, what publication or publications recommended the stock, who relied on the recommendations, and in what respect the recommendations were false or misleading.[6] Accordingly, the Moving Defendants' motions to dismiss the first and second claims of the complaint are granted.

### IV. Third Claim: RICO Conspiracy Claim

▮ Section 1962(d) of Title 18 makes it unlawful for any person to conspire to violate § 1962(b) or § 1962(c). Although the pleading of a RICO conspiracy is not measured by the heightened particularity requirement of Rule 9(b), "[e]ven so, the complaint must allege some factual basis for a finding of a conscious agreement among the defendants." *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 26 n. 6 (2d Cir.1990).

---

6. To the extent the complaint seeks to allege that the Moving Defendants aided and abetted in the violation of RICO predicate acts, those allegations—as discussed above—fail to allege adequately actual knowledge of the primary violations and substantial assistance by the aider and abettor. *See Moll v. U.S. Life Title Insurance Company of New York*, 710 F.Supp. 476, 479 (S.D.N.Y.1989) (citing *Bloor v. Carro, Spanbock, Londin, Rodman & Fass*, 754 F.2d 57, 62 (2d Cir.1985)).

 In the case now before the Court, plaintiffs have merely made conclusory allegations, parroting the language of the RICO statute, that "[a]ll defendants agreed to conduct or participate directly or indirectly in the affairs of the Enterprise through a pattern of racketeering activity," Complaint ¶ 95, and that "[e]ach of the defendants in this Count [*sic*] also agreed to participate in at least two of the activities constituting predicate offenses under 18 U.S.C. § 1341." Complaint ¶ 96. No *factual* allegations supporting a finding that the Moving Defendants consciously agreed to commit at least two predicate acts are found in the complaint, *Hecht, supra,* 897 F.2d at 26 n. 6, nor is there any allegation that the Moving Defendants "'understood the scope of the enterprise and knowingly agreed to further its affairs through the commission of various offenses.'" *Morin v. Trupin,* 711 F.Supp. 97, 111 (S.D.N.Y.1989) (quoting *Seville Industrial Machinery Corp. v. Southmost Machinery Corp.,* 567 F.Supp. 1146, 1154–55 (D.N.J.1983) (quoting *United States v. Riccobene,* 709 F.2d 214, 225 (3d Cir.), *cert. denied,* 464 U.S. 849, 104 S.Ct. 157, 78 L.Ed.2d 145 (1983)), *aff'd in part, rev'd in part on other grounds,* 742 F.2d 786 (3d Cir.1984), *cert. denied,* 469 U.S. 1211, 105 S.Ct. 1179, 84 L.Ed.2d 327 (1985)); *see also Hecht, supra,* 897 F.2d at 25–26 (citing *Morin, supra*). Therefore, plaintiffs' RICO conspiracy claim is insufficient as a matter of law under Fed.R.Civ.P. 12(b)(6), and thus the Moving Defendants' motions to dismiss that claim are granted.

### Conclusion

For the reasons set forth above, the Moving Defendants' motions to dismiss the five claims in the complaint in this action are granted. Leave to replead is granted.[7]

---

**7.** Although unnecessary for the disposition of the instant motions, the Moving Defendants' additional arguments regarding plaintiffs' failure to plead the securities fraud violations with particularity as required by Rule 9(b), and plaintiffs' failure to allege adequately the "relationship" and "continuity" elements of a RICO viola-

Counsel for plaintiffs shall provide a copy of this opinion to each plaintiff.

SO ORDERED.

tion, *see H.J. Inc. v. Northwestern Bell Telephone Co.,* 492 U.S. 229, 109 S.Ct. 2893, 2900, 106 L.Ed.2d 195 (1989), are well taken. Should plaintiffs choose to replead in this action, they would be well advised to consider those arguments as explicated in the Moving Defendants' thorough briefs.