Robert M. MARTIN, Cecilia A. Martin, David F. Apple, MD, Professional Corporation Pension Plan, Glen A. Juntti, Barbara J. Juntti, individually and on behalf of those similarly situated, Plaintiffs,

v.

PRUDENTIAL–BACHE SECURITIES, INC., John Rissanen, Terrill A. Turner, Robert E. Johnson, Jr., J & T Investors, Inc. and John Does 1–100, Defendants.

No. C–C–90–0203–MU.

United States District Court, W.D. North Carolina, Charlotte Division.

May 21, 1991.

Gregory Bartko, Reynolds, Bryant & Patterson, Raleigh, NC, Marvin A. Miller, Patrick E. Cafferty, Chertow and Miller, Chicago, IL, and Marvin Schiller, Schiller & Barringer, Raleigh, NC, for plaintiffs.

John R. Wester, David C. Wright, III, and Richard B. Whisnant, Robinson, Bradshaw & Hinson, Charlotte, NC, Steve J. Davis, Charles A. Smith, Phears and Davis, Norcross, GA, C. Howard Nye, Nye, Phears & Davis, Durham, NC, for defendants.

### ORDER

MULLEN, District Judge.

This matter is before the court on a motion of the defendants to dismiss the complaint. The motion will be granted and the complaint will be dismissed with leave to amend if the plaintiffs can allege their claims with greater particularity.

This case was brought by a group of plaintiffs, headed by Robert M. and Cecilia A. Martin, seeking to be representatives of a class composed of all persons or entities who bought International Broadcasting Corporation of America ("IBCA") common stock between 1 May 1988 and 31 October 1989. On behalf of the purported class they have sued Prudential–Bache Securities, Inc. ("Pru–Bache") John Rissanen, Terrill A. Turner, Robert E. Johnson, Jr., J & T Investors, Inc. ("J & T"), and a group of unknown stock salesmen and brokers identified as John Does 1–100. The plaintiffs have alleged violations of the Securities Exchange Act of 1934, 15 U.S.C. § 78a *et seq.*, ("the Exchange Act"), violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, *et seq.*, ("RICO"), and pendant claims for common law fraud and negligent misrepresentation. The plaintiffs have also made claims peripherally related to the main demands based upon control person liability, aiding and abetting and the doctrine of *respondeat superior.*

The defendants have filed a motion to dismiss the complaint for failure to state a claim under Fed.R.Civ.P. 12(b)(6) and for failure to plead fraud with the specificity required under Fed.R.Civ.P. 9(b). A hearing was held on the motion to dismiss on 21 February 1991. At the close of the hearing, the court took the matter under advisement.

### COUNT I

### SECTION 10(b) FRAUD CLAIMS

■ Count I of the complaint alleges violations of Section 10(b) of the Exchange Act under a theory of fraud on the marketplace. The court recognizes that Fed.R.Civ.P. 9(b)'s more particular requirements for pleading fraud must be read in light of the requirement of Rule 8 that a complaint consist of "short and plain statement." *See, e.g., Clark v. Cameron–Brown Co.*, 72 F.R.D. 48 (M.D.N.C.1976). No controlling Fourth Circuit precedent has been found which sets forth the degree of specificity required in a securities fraud case or proposes a test to gauge the level of compliance of individual securities complaints with Rule 9(b). Other district courts within this circuit and other circuits have addressed the question, however.

In *Kitchens v. U.S. Shelter Corp.,* [1984 Transfer Binder] Fed.Sec.L.Rep. (CCH) 91,-838, 1984 WL 1150 (D.S.C.1984), the court found that the complaint satisfied the requirements of Rule 9(b) and that the Fourth Circuit has refused to adopt the "stringent pleading requirements" of the Second Circuit. Subsequent to the decision in *Kitchens,* though, the Fourth Circuit described "the stringent pleading requirements" of Rule 9(b) in a case not dealing with securities laws. *Walk v. Baltimore and Ohio R.R.,* 847 F.2d 1100 (4th Cir.1988), *vacated on other grounds,* 492 U.S. 914, 109 S.Ct. 3235, 106 L.Ed.2d 583 (1989). Most recently a district court within the Fourth Circuit concluded that Rule 9(b) required more specificity in supporting conclusory allegations than was put forth in the complaint then before that court. *Gollomp v. MNC Financial, Inc.,* 756 F.Supp. 228 (D.Md.1991). None of these cases provides a final, authoritative answer to the question at hand and the *Gollomp* decision, which directly addresses the point, is on appeal.

Therefore, the court concludes that there is no binding Fourth Circuit precedent on this issue. The court notes that courts appear to have recently applied Rule 9(b) to securities cases in significantly different ways with results that point in every direction. *Compare Gutman v. Howard Savings Bank,* 748 F.Supp. 254 (CCH) 95,631 (D.N.J.1990) and *In re Midlantic Corporation Shareholder Litigation,* 758 F.Supp. 226 (D.N.J.1990) and *Nicholas v. Poughkeepsie Savings Bank/FSB,* [1990 Transfer Binder] Fed.Sec.L.Rep. (CCH) 95,606, 1990 WL 145154 (S.D.N.Y. September 26, 1990) with *Haft v. Eastland Financial Corp.,* 755 F.Supp. 1123 (D.R.I.1991) and *Akerman v. Bankworcester,* 751 F.Supp. 11 (D.Ma.1990) and *Gollomp v. MNC Financial, Inc.,* 756 F.Supp. 228 (D.Md.1991).

Upon review of the relevant authorities, this court agrees with the court in *Gollomp* as to how the Fourth Circuit would apply Rule 9(b). As explained by other courts, Rule 9(b) requires a greater specificity as to fraud claims than may be required in other suits. This greater specificity is appropriate and necessary because of the potential for abuse of a strike suit brought for its *in terrorem* effect. *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 739, 95 S.Ct. 1917, 1927, 44 L.Ed.2d 539 (1975). The role of Rule 9(b) in curtailing suits brought for their *in terrorem* value is well recognized. *Wayne Inv. v. Gulf Oil Corp.,* 739 F.2d 11 (1st Cir.1984); *Christidis v. First Pennsylvania Mortg. Trust,* 717 F.2d 96 (3rd Cir.1983); *Decker v. Massey–Ferguson Ltd.,* 681 F.2d 111 (2d Cir.1982).

In *Crystal v. Foy,* 562 F.Supp. 422 (S.D.N.Y.1983) the court stated that the complaint must allege specific facts for the fraud along with sources that support the specific facts alleged and a basis from which an inference of fraud may fairly be drawn; *See also, Denny v. Barber,* 576 F.2d 465, 470 (2nd Cir.1978) (one cannot allege "fraud by hindsight"); and *Gollomp v. MNC Financial, Inc.,* 756 F.Supp. 228 (D.Md.1991) (plaintiff must plead sufficient facts to support conclusory allegations).

Applying Rule 9(b) to the complaint in this case, the Court finds the complaint lacking in the specificity required to state a claim for fraud. The twenty-three page complaint contains a wealth of allegations; however, even these voluminous allegations fail to provide the indicia of fraud required by Rule 9(b). In particular, the complaint either fails to identify or only obliquely refers to sources supporting the factual allegations of fraud, especially the more damaging allegations.

As in other cases recently before this court, the complaint details a series of financial reports, press releases, SEC filings and other information available to the public and then alleges that these statements were all designed to mislead investors in the marketplace. For example the complaint alleges:

> "[The] [d]efendants' statements concerning the value of IBCA stock and the assets underlying such stock when making statements to the press ... shareholders of IBCA ... brokers ... bankers and others, were material misstatements or omissions which served to manipulate the market ...

> Defendants' statement that liquidation ... of IBCA assets would be the best way to enhance IBCA shareholder value, in statements made to the press ... share-

holders ... bankers and others, were material misstatements or omissions which served to manipulate the market." Plaintiff's First Amended Class Action Complaint, Paragraphs 53 and 54.

The complaint does contain some more specific allegations, but even these allegations are purposefully and puzzlingly vague. For example Paragraph 39 alleges:

> "On or about November 22, 1988, Johnson had a telephone conference with Rissanen, brother of one of Johnson's friends, Juko Rissanen. In that telephone conference in which a Shearson Lehman broker also participated, Johnson privately disclosed J & T's true intentions regarding IBCA, including J & T's planned offer to IBCA and the timetable for the proposed offers."

Then, after allegations that Prudential Bache brokers "commenced a campaign to solicit trading activity in IBCA stock" subsequent to Johnson's disclosure of material non-public information, Paragraph 41 alleges:

> "A Prudential–Bache broker who reported the improper activity to his superiors was discharged from his employment to prevent the scheme's interruption."

Finally, Paragraph 45 concludes the "Facts" section of the complaint by noting that:

> "On or about October 31, 1989, the actions of the defendants in engaging in the above-described conduct in order to manipulate the market price of IBCA stock, was reported by the former Prudential–Bache broker that [sic] was allegedly terminated after disclosing this insider trading activity to his superiors."

These factual allegations, while having the aroma of specificity, actually raise as many questions as they purport to answer. These allegations identify neither the Shearson Lehman broker who allegedly participated in the telephone conference of 22 November nor the Pru–Bache broker who reported the activity to his superiors. Shearson Lehman is not mentioned anywhere else in the complaint and their identification with this allegation is, at best, puzzling. Additionally, the termination date of the Pru–Bache broker who was allegedly fired for reporting the

activity to his superiors is not provided. From the complaint it would appear that this broker was terminated in late 1988. However, if that is correct, there is then a one year delay between the termination and his actions in "reporting" the defendants' conduct. It is not even clear whether the terminated Pru–Bache broker "reported" the defendants' activities to the Securities and Exchange Commission or to some third party such as *The Wall Street Journal* or securities lawyers.

Although these allegations may at first blush have the appearance of specificity, in substance they are conclusory and fail to provide an adequate factual basis for an inference of fraud and scienter. Simply put, plaintiffs have not shown the factual basis for the alleged pervasive fraud. Plaintiffs have failed to allege facts that would lead one reasonably to believe that the price increase for IBCA stock from approximately $11 to approximately $15 per share "must be" attributable to fraud. *DiLeo v. Ernst & Young,* 901 F.2d 624, 627 (7th Cir.1990).

The Court concludes that Count I of the complaint fails to plead fraud with the particularity required by Rule 9(b). Therefore, the Court will dismiss count one pursuant to Rules 9(b) and 12(b)(6).

## COUNT II

### SECTION 9 CLAIMS

■ Count II alleges a violation of Section 9 of the Securities Exchange Act by the manipulation of stock sold through NASDAQ. Section 9 prohibits the manipulation of any stock sold through a "national securities exchange." *See,* 15 U.S.C. 78i. "National securities exchange" is not defined in Section 9, but "exchange" is defined in Section 3 as:

> "[A]ny organization, association, or group of persons, whether incorporated or unincorporated, which constitutes, maintains, or provides a marketplace or facilities for bringing together purchasers and sellers of securities or for otherwise performing the functions commonly performed by a stock exchange ...".

Of five cases found addressing this point, all five held or intimated that the Section 3 definition of an exchange did not apply to NASDAQ. *See, Dorfman v. First Boston Corp.,* 336 F.Supp. 1089, 1097 (E.D.Pa.1972); *Gavron v. Blinder Robinson and Co.,* 115 F.R.D. 318, 320, n. 3 (E.D.Pa.1987); *Cammer v. Bloom,* 711 F.Supp. 1264, 1277, n. 18 (D.N.J.1989); *Cowen & Company v. Merriam,* 745 F.Supp. 925, 931 (S.D.N.Y.1990); and *Chemetron Corp. v. Business Funds, Inc.,* 682 F.2d 1149, 1160, n. 14 Par. 2 (5th Cir.1982), *vacated and remanded on other grounds,* 460 U.S. 1007, 103 S.Ct. 1245, 75 L.Ed.2d 476 (1983). Therefore, memorializing an oral ruling from the bench at the hearing on this motion, the court will dismiss count II for failure to state a claim.

## COUNTS III, IV and VI CONTINGENT CLAIMS

Counts III, and IV allege control person liability and liability for aiding and abetting the activities described in counts I and II. Because the underlying Counts I and II have been dismissed, Counts III and IV cannot be supported and must likewise be dismissed. Similarly, Count VI, alleging liability on the part of Prudential–Bache under the doctrine of *respondeat superior* for claims which have otherwise been dismissed, fails to state a claim.

## COUNT V

## RICO CLAIMS

■ The plaintiffs' RICO claim alleged in Count V is attacked by the defendants because the allegations do not establish complete distinction of identity between the "enterprise" and the "person" alleged to have caused the harm. The defendants concede the point but suggest that better draftsmanship will cure the defect. This does not seem possible given the facts alleged, and even if it were possible, the plaintiffs have not shown a "pattern" of racketeering activity sufficient to fulfill the "continuity" requirements of *H.J. Inc. v. Northwestern Bell Telephone Co.,* 492 U.S. 229, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989) as applied by the Fourth Circuit in *Eastern Publishing and Advertising, Inc. v.*

*Chesapeake Publishing and Advertising, Inc.,* 895 F.2d 971 (4th Cir.1990). Again, memorializing an oral ruling made from the bench, the RICO claim of Count V will be dismissed.

## COUNTS VII AND VIII

## COMMON LAW FRAUD AND NEGLIGENT MISREPRESENTATION

■ As a result of these conclusion, Counts VII and VIII alleging (1) common law fraud and deceit, and (2) common law negligent misrepresentation, which are based on pendent jurisdiction, should be dismissed. *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

These determinations of the Court render all other outstanding motions MOOT.

IT IS THEREFORE ORDERED THAT the motion by the defendants to dismiss the complaint is GRANTED and that the complaint is hereby DISMISSED without prejudice.