Jeryl MOLL, on behalf of herself and all others similarly situated, and Terence Moll, Plaintiffs,

v.

US LIFE TITLE INSURANCE COMPANY OF NEW YORK, Defendant.

Albert ELSER, Robin D. Harlow, Jolene K. Harlow and Brian McGuire, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

TITLE USA, INC. f/k/a US Life Title Insurance Company of New York, Defendant.

Nos. 85 Civ. 6866 (PKL), 86 Civ. 4271 (PKL).

United States District Court, S.D. New York.

March 29, 1989.

Paul K. Rooney, P.C., New York City, for plaintiffs.

Rogers & Wells, New York City (James N. Benedict, Margaret M. Vande Wiele, of counsel), for defendant.

## ORDER & OPINION

LEISURE, District Judge:

This matter is before the Court on defendant's motion to dismiss plaintiffs' First Consolidated Complaint (the "Consolidated Complaint") for failure to state a claim upon which relief can be granted, pursuant to Fed.R.Civ.P. 12(b)(6). For the factual background to this action, *see Moll v. US Life Title Insurance Co.,* 654 F.Supp. 1012 (S.D.N.Y.1987) (hereinafter *"Moll I "*). The following is a brief procedural history of this action.

Plaintiff Jeryl and Terence Moll ("Moll") brought this action, asserting claims under the Real Estate Settlement Property Act ("RESPA"), 12 U.S.C. § 2601 *et seq.,* and the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.,* as well as various state law claims against US Title Life Insurance Company of New York ("US Life"). Moll filed two amended complaints. Plaintiffs Albert Elser ("Elser"), Brian McGuire ("McGuire"), and Robin and Jolene Harlow ("Harlow") later served a similar complaint (the *"Elser* complaint"). The two actions, *Moll v. US Life* and *Elser v. Title USA,* were consolidated in November, 1986.

On February 17, 1987, this Court granted defendant's motions to dismiss both the *Moll* and *Elser* complaints in their entirety. *Moll I,* 654 F.Supp. 1012 (S.D.N.Y.1987). Plaintiffs moved to certify for interlocutory appeal the Court's ruling that the RESPA claims were time-barred. The Court denied this motion on April 21, 1987. *Moll v. US Life,* Opinion and Order, dated April 21, 1987, 1987 WL 10026.

Plaintiffs filed their First Consolidated Complaint, which is the subject of this motion, on April 16, 1987. Although the Court had previously dismissed plaintiffs' RESPA claims with prejudice, plaintiffs reasserted those claims. Defendant moved to dismiss the Consolidated Complaint in its entirety in June, 1987. On July 19, 1988, this Court rendered a decision (*"Moll II "*) on defendant's motion to dismiss the Consolidated Complaint. In that opinion, the Court indicated its willingness to reconsider its holding that the RESPA claims were time-barred and addressed several issues concerning the pleading of the predicate acts alleged by plaintiffs as part of their RICO claims. The Court reserved decision on whether to dismiss plaintiffs' RICO claims pending the *en banc* determination by the Second Circuit of *Beauford v. Helmsley,* 843 F.2d 103 (2d Cir.1988).

After the parties rebriefed the RESPA limitations issues, the Court issued an opinion on December 5, 1988, once again dismissing plaintiffs' RESPA claims with prejudice. *Moll v. US Life,* Opinion and Order, 700 F.Supp. 1284 (S.D.N.Y.1988) (*"Moll III"*). On December 15, 1988, plaintiffs moved again for reconsideration of those issues, with the Court denying the motion. *Moll v. US Life,* Order and Opinion, 1988 WL 142468 dated December 23, 1988.

On January 13, 1989, the Second Circuit decided *Beauford v. Helmsley,* 865 F.2d 1386 (2d Cir.1989). The Court will now address defendant's motion to dismiss the remaining claims of plaintiffs' Consolidated Complaint.

## RICO CLAIMS

### 1. PREDICATE ACTS

#### A. *Mail Fraud*

In *Moll II,* this Court considered whether plaintiffs' various individual allegations concerning mail and wire fraud were pleaded with the specificity and particularity required by Fed.R.Civ.P. 9(b). The Court found that the allegations of mail fraud in ¶¶ 153–163 of the Consolidated Complaint were "sufficient to satisfy the [particularity] pleading requirement of Rule 9(b)." [1] *Moll II,* slip op. at 11–13. The Court did not, however, go on to address US Life's contention that the acts alleged by plaintiffs, though pleaded in some detail, simply do not constitute mail fraud.

Plaintiffs base their common law and mail fraud claims on three distinct theories of fraud. First, that defendant misrepresented the premium charged for its title insurance. Second, that defendant had a duty to disclose to plaintiffs the payments of "kickbacks" or "rebates" to their attorneys. And third, that defendant aided and abetted James N. Feeney, Esq. ("Feeney") and Ronald M. Kahn, Esq. ("Kahn") (collectively "the attorneys") in committing a fraud against plaintiffs.

1. The Court also held that plaintiffs' other allegations of mail fraud (¶¶ 164–66) and wire fraud (¶¶ 167–68) in the Consolidated Complaint

#### 1. Plaintiffs' Theory of Misrepresentation

Plaintiffs allege that defendant misrepresented to them that US Life would receive the full premium charged for the title insurance listed on line 1108 of HUD–1. Consolidated Complaint ¶¶ 64–66. In *Moll I,* this Court specifically acknowledged plaintiffs' allegations that attorney Feeney filled out plaintiff Moll's HUD–1 statement and that Timothy J. Miller ("Miller"), President of Heritage Abstract Corporation ("Heritage Abstract"), prepared the Heritage Abstract bill. *Moll I, supra* at 1016. Nevertheless, the Court found these actions insufficient to constitute a misrepresentation by US Life or any of its agents regarding the ultimate disposition of the premium proceeds. *Id.* at 1027. Despite this clear indication in *Moll I* that further allegations would be necessary for a proper misrepresentation claim, plaintiffs have not remedied the deficiencies in their earlier complaints. Indeed, they again rely on the entries made by Miller and Feeney. The Court's reasoning in its earlier opinion is thus equally applicable with regard to the Consolidated Complaint now before it:

> Nowhere in their complaints do plaintiffs allege that US Life *represented* that it was " 'accepting' (*i.e.,* retaining for its own account) the premium charged." The complaints do state that US Life charged the plaintiffs a certain premium for their title insurance, however, plaintiffs fail completely to plead any facts indicating whether defendant or any agent of defendant ever discussed with plaintiffs what US Life would do with the premiums.

654 F.Supp. at 1027 (citations omitted) (emphasis in original); *see also Moll III, supra* at 1292–93. Plaintiffs' conclusory allegations that defendant made false representations are insufficient to sustain their claims of common law or mail fraud and thereby their alleged RICO claims.

were insufficiently pleaded under Rule 9(b). *Moll II,* slip op. at 13.

### 2. Plaintiffs' Duty of Disclosure Theory

Plaintiffs also contend that US Life had a duty to disclose the payments to Feeney and Kahn and that its failure to do so constituted fraud. It is undisputed that US Life did not reveal to plaintiffs how the title insurance premium would be distributed. The issue remains, however, whether US Life had a duty to disclose those payments.

The Second Circuit has "expressly held that, under New York law, a duty to disclose material facts is triggered: 'first where the parties enjoy a fiduciary relationship ... and second, where one party possesses superior knowledge, not readily available to the other, and knows that the other is acting on the basis of mistaken knowledge.'" *Grumman Allied Industries v. Rohr Industries, Inc.*, 748 F.2d 729, 738–39 (2d Cir.1984) (*quoting Aaron Ferer & Sons, Ltd. v. Chase Manhattan Bank, N.A.*, 731 F.2d 112, 123 (2d Cir. 1984)). As this Court has determined in its earlier opinions, US Life owed no fiduciary duty to plaintiffs. *Moll I, supra* at 1029; *Moll III, supra* at 1291.

As to the alternative basis for fraud under New York common law, plaintiffs have failed to allege that defendant knew that plaintiffs were acting upon a mistaken belief as to a material fact and did not so inform plaintiffs. Although plaintiffs have amended their complaint to assert that US Life "knew that the purchasers had no knowledge of the payments to Mr. Feeney and Mr. Kahn," Consolidated Complaint ¶ 59, they have failed to allege that this representation was material. Therefore, even if plaintiffs have established the first element pertaining to knowledge, they still have not stated a claim under this alternative doctrine of fraud. Plaintiffs have failed to allege that the information concerning the rebate was material.

This Court has previously held that the title insurance fees were non-negotiable as a matter of law. New York Insurance Law § 6409; *Moll I, supra* at 1029; *Moll III, supra* at 1290, n. 4. The premiums charged by US Life are mandated by the New York State Insurance Department; they are not negotiable. Nevertheless, the Court in *Moll I,* recognizing that there are elements affecting consumer choice other than price, granted plaintiffs another opportunity to plead that the alleged nondisclosures on the part of US Life were material. However, plaintiffs have merely resuscitated the allegations concerning price which were previously struck down by this Court. Plaintiffs have failed to make even the bare allegation that if they had known of the alleged referral by their attorneys they would not have selected US Life.

In sum, although US Life did not reveal to plaintiffs how their premiums would be distributed, it had no obligation to do so. Furthermore, plaintiffs have failed to allege that any nondisclosures were material. Therefore, plaintiffs claims of fraud cannot be based on US Life's alleged failure to disclose the distribution of the title insurance premium.

### 3. Plaintiffs' Aiding and Abetting Theory

Plaintiffs third theory of fraud is that US Life aided and abetted the attorneys in committing fraud. It is well settled law in this Circuit that a common law action exists for aiding and abetting. To make out such a claim, a plaintiff is required to allege:

1) the existence of a violation committed by the primary party;

2) "knowledge" of this violation on the part of the aider and abettor; and

3) "substantial assistance" by the aider and abettor in achievement of the violation.

*See Bloor v. Carro, Spanbock, Londin, Rodman & Fass*, 754 F.2d 57, 62 (2d Cir. 1985); *Armstrong v. McAlpin*, 699 F.2d 79, 91 (2d Cir.1983); *IIT v. Cornfeld*, 619 F.2d 909, 922 (2d Cir.1980).

Plaintiffs contend that US Life aided and abetted the attorneys in breaching their fiduciary duty to plaintiffs. Plaintiffs' arguments demonstrate that their claims revolve around the alleged breach of an ethical duty by their attorneys. Plaintiffs' Memorandum of Law in Opposition to Motion to Dismiss at 43–45.

It cannot be disputed that examining attorneys, in the course of their representation of home purchasers are ethically prohibited from accepting any money or thing of value from title insurance companies without first obtaining the express consent of their clients. *See In re Equitable Office Bldg. Corp.*, 83 F.Supp. 531 (S.D.N.Y.), *rev'd on other grounds*, 175 F.2d 218 (2d Cir.1949); New York State Opinion 351 (1974); New York State Opinion 320; ABA Comm. on Ethics and Professional Responsibility, Opinion 394 (1962); *The Lawyer's Code of Professional Responsibility*, New York Judiciary Law (Appendix) DR 1–102(A)(4), EC 5–16, DR 5–101(A), DR 5–107(A) and EC 6–1 (McKinney 1975). An attorney is permitted to act in the dual capacity of title examiner and representative of a party to a real estate transaction so long as full disclosure is made and either the attorney gives the client a credit for the amount of the fees paid to the attorney by the title company, or the client expressly consents to the retention of the fee. *See* New York State Opinion 576, pp. 8–9 (June 25, 1986). Examining counsel who receive money from title insurance companies, without the express consent of their clients, are acting unethically and illegally. This is especially true where "an attorney-agent performs no significant additional services in return for his portion of the premium...." *Id.* at 7.

Plaintiffs have adequately alleged that a violation was committed by their attorneys. Moreover, the Court need not determine whether plaintiffs have adequately alleged that defendant knew of the alleged fraud as plaintiffs have failed adequately to allege that US Life rendered substantial assistance in furtherance of the fraud.

Plaintiffs' contend that defendant rendered substantial assistance to Feeney and Kahn in furtherance of the scheme by: 1) paying a fee to Feeney and Kahn; 2) by accepting less than the full premium for

the title insurance; and 3) by using Heritage Abstract to make the payments.[2]

As a general rule, inaction on the part of the alleged aider and abettor is not substantial assistance, except when it was designed intentionally to aid the primary fraud or it was in conscious and reckless violation of a duty to act. *IIT v. Cornfeld, supra*, 619 F.2d at 925–27. Moreover, in order to rise to the level of substantial assistance, the complaint must allege that the acts of the aider and abettor proximately caused the harm on which the primary liability is predicated. *See, e.g., Bloor v. Carro, Spanbock, Londin, Rodman & Fass*, 754 F.2d 57, 62 (2d Cir.1985).

Plaintiffs contend that defendant rendered substantial assistance by paying a rebate to Feeney and Kahn and accepting less than the full premium. However, in the present case, any damage that occurred to plaintiffs stemmed from the failure of the attorneys to disclose the rebates. As New York State Ethics Opinions makes clear, the violation is not the receipt of the payments but the failure to disclose and, if required, the failure to credit those payments against the attorney's fee. Moreover, even if disclosure had occurred this would not establish that plaintiffs were entitled to a credit to their accounts. The mere fact that US Life paid the attorneys a fee and did so by rebating a portion of the title insurance fee does not rise to the level of substantial assistance. As discussed above, US Life had no duty to disclose these payments. These acts by US Life in no way substantially assisted in the commission of the alleged fraud.

Nor does the fact that US Life required title premiums to be paid through Heritage Abstract rise to the level of substantial assistance. As the Court noted in *Moll III, supra* at 1291,

> whether US Life directly received the initial payment, or authorized Heritage Abstract, acting as US Life's representa-

---

**2.** Additionally, plaintiffs contend that defendant rendered substantial assistance to Feeney and Kahn in furtherance of the scheme by "allowing Feeney and Kahn to represent that US Life would receive and retain the full amounts paid for title insurance." Plaintiffs' Memorandum at

**44.** As discussed *supra*, however, nowhere in the Consolidated Complaint do plaintiffs allege that any representations were made about how the title insurance fee was to disbursed. Therefore, the Court need not consider this purported ground.

tive at the closing, to receive it, is relatively unimportant. The key issue is who *ultimately* received the premium. If US Life had received the payment directly, and subsequently rebated part of it to plaintiffs' attorneys, plaintiffs would not have been any more aware of the ultimate disposition of the funds. (emphasis added)

Therefore, the fact that the payments were made through Heritage Abstract did not substantially assist the alleged fraudulent scheme. Plaintiffs therefore, have failed to state a claim for aiding and abetting.

In sum, plaintiffs have failed to allege a claim for either common law fraud or mail fraud. Therefore, these allegations cannot support plaintiffs' RICO claims.

### B. *Commercial Bribery*

■ Additionally, plaintiffs allege violations of the New York commercial bribery statute as the requisite predicate acts to sustain their RICO claims. The violation of a state law bribery statute providing a minimum penalty of at least one year imprisonment can constitute a predicate RICO act. 18 U.S.C. § 1961(1)(A). The New York Penal Law provides that:

**3.** Under the "law of the case" doctrine, a court usually adheres to its prior rulings in a case unless it has overlooked "'matters or controlling decision' which, had they been considered, might reasonably have altered the result reached by the court." *United States v. International Business Machines Corp.,* 79 F.R.D. 412, 414 (S.D.N.Y.1978). *See also Adams v. United States,* 686 F.Supp. 417, 418 (S.D.N.Y.1988); *Bozsi Ltd. Partnership v. Lynott,* 676 F.Supp. 505, 509 (S.D.N.Y.1987); *Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc.,* 611 F.Supp. 281, 283 (S.D.N.Y.1985). As Judge Learned Hand wrote in *Higgins v. California Prune & Apricot Grower, Inc.,* 3 F.2d 896, 898 (2d Cir.1924), "the 'law of the case' does not rigidly bind a court to its former decisions, but is addressed only to its good sense." Similarly, in *Messenger v. Anderson,* 225 U.S. 436, 444, 32 S.Ct. 739, 740, 56 L.Ed. 1152 (1912), the Supreme Court declared that the law of the case, as applied to the effect of previous orders on the later action of the court rendering them in the same case, "merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit on their power."

In the present case, the Court has consistently held that the amount of the title insurance premium was non-negotiable as a matter of law.

[a] person is guilty of commercial bribing in the first degree when he confers, or offers or agrees to confer, any benefit upon any employee, agent or fiduciary without the consent of the latter's employer or principal, with intent to influence his conduct in relation to his employer's or principal's affairs, and when the value of the benefit conferred or offered or agreed to be conferred exceeds one thousand dollars and *causes economic harm to the employer or principal in an amount exceeding two hundred fifty dollars.* Commercial bribing in the first degree is a class E felony.

N.Y.Penal Law § 180.03 (emphasis added).

Although the Court discussed the sufficiency of plaintiffs' commercial bribery allegations in *Moll II, supra* at 14, it did so only summarily. In so doing, it stated that "the allegations of commercial bribery alleged in paragraphs 169–170 do constitute predicate acts under the RICO statute." *Moll II, supra* at 14.[3] However, the Court failed to consider that, as the title insurance premium was non-negotiable, plaintiffs have not alleged that US Life caused each of them economic harm in excess of $250.

*See* New York Insurance Law § 6409; *Moll I, supra* at 1029; *Moll III, supra* at 1290, n. 4. However, in determining the sufficiency of plaintiffs' commercial bribery allegations, the Court failed to address the impact of its prior determination that the title insurance premium was non-negotiable. The New York commercial bribery statute, N.Y.Penal Law § 180.03, requires that the bribe result in *economic* harm to the principal in an amount exceeding $250. Plaintiffs sole allegation of economic harm is that they did not receive the title insurance at a lower fee. The Court has previously held that plaintiffs could not have purchased their title insurance for a lower price.

Therefore, reconsideration is justified as the Court is strongly convinced that its prior ruling, that plaintiff had sufficiently alleged commercial bribery, was erroneous. As stated in Moore, 1B Federal Practice ¶ 0.404[1], at 407:

Since a lower federal court cannot by its law of the case bind a higher court having appellate jurisdiction over it, the only sensible thing for a lower federal court ... to do is to set itself right instead of inviting reversal above, when convinced that its law of the case is substantially erroneous.

*See Brunswick Corp. v. Sheridan,* 582 F.2d 175, 177 (2d Cir.1978) (citing above passage).

The Court has consistently held that the amount of the title premium was non-negotiable. Nevertheless, plaintiffs allege that they suffered economic loss as a result of their attorneys' purchasing title insurance from US Life. However, as the Court recognized in *Moll I*, 654 F.Supp. at 1029, and again in *Moll III*, *supra* at 1290, n. 4, plaintiffs could not have purchased their policies from another company at a lower price. Nor is US Life, alleged to have bargained for or otherwise have caused plaintiffs attorneys to fail to reduce their fees correspondingly. In essence, as this Court has previously determined that the title insurance premium is non-negotiable, plaintiffs argument for economic harm is merely that the attorneys did not turn over the "rebate" or "kickback" to them. However, the statute's economic harm requirement—specifically added by the legislature in 1983—would be rendered superfluous if it were met simply by an agent's failure to turn over a bribe to his principal. Plaintiffs' allegations of commercial bribery are therefore insufficient.

In sum, as plaintiffs have failed to allege sufficient predicate acts, they have failed to state a RICO violation.

## 2. LEAVE TO REPLEAD

█ Plaintiffs seek leave to replead their RICO claim to include allegations of additional predicate acts. The Court notes at the outset that plaintiffs are, in effect, requesting a sixth opportunity to try to fashion a colorable claim.[4]

In the present case, plaintiffs were given a liberal time period to correct the pleading. Unlike the case in which a plaintiff is unaware of the deficiencies of his first complaint, in this case the Court, in *Moll I*, specified the defects to be cured. *Cf. Goldberg v. Meridor*, 567 F.2d 209 (2d Cir. 1977), *cert. denied*, 434 U.S. 1069, 98 S.Ct. 1249, 55 L.Ed.2d 771 (1978).

Plaintiffs' Consolidated Complaint is defective for, *inter alia*, the same reasons as the initial complaint. As plaintiffs have been given the opportunity to amend and plead properly their fraud and RICO counts, and have failed to do so in the Consolidated Complaint, dismissal with prejudice is justified. *See Decker v. Massey–Ferguson, Ltd.*, 681 F.2d 111, 114–15 (2d Cir.1982); *Avnet, Inc. v. American Motorists Ins. Co.*, 684 F.Supp. 814 (S.D.N.Y. 1988). Leave to replead is denied.

## STATE LAW CLAIMS

Plaintiffs' Sixth through Eleventh claims for relief are pendent state law claims which themselves provide no independent basis for federal jurisdiction. Because these pendent claims provide no other basis for federal jurisdiction, and because no considerations of judicial economy would be served at this stage of the litigation by retaining jurisdiction over the pendent claims, those claims are likewise dismissed. *See United Mine Workers of America v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed. 2d 218 (1966); *see also Mastercraft Industries, Inc. v. Breining*, 664 F.Supp. 859, 861 (S.D.N.Y.1987); *In re Investors Funding Corp. of N.Y. Securities Litigation*, 523 F.Supp. 550, 560 (S.D.N.Y.1980).

## CONCLUSION

For the reasons stated above, defendant's motion to dismiss the Consolidated Complaint is granted. Leave to replead is denied.

SO ORDERED.

---

4. Plaintiff Moll filed her first complaint asserting claims against defendant in the state court in May 1985. She commenced her federal action on August 29, 1985. An amended complaint was filed September 13, 1985. A Second Amended Complaint was filed in November 1985. Plaintiffs Elser, Harlow and McGuire filed their complaint on May 30, 1986. Finally, the First Consolidated Complaint, the subject of this motion, was filed on April 16, 1987.