OPINION OF THE COURT
 

 Levine, J.
 

 In 1983 the Legislature created the felony crimes of first degree commercial bribing and commercial bribe receiving by adding an additional element to the definitions of the corresponding prior commercial bribery class A misdemeanors: that the bribe “causes economic harm to the employer or principal in an amount exceeding two hundred fifty dollars” (L 1983, ch 577, amending Penal Law §§ 180.03, 180.08). The primary issue on this appeal is the legal sufficiency of the evidence to establish that Aetna Life and Casualty Company, and Commercial Union Insurance Company, incurred the requisite economic harm as a result of defendant’s bribery of their employees, as alleged in the two felony commercial bribing counts of the indictment. Resolving that issue requires us to determine the nature of the proof required to demonstrate economic harm under the circumstances of this case.
 

 The underlying facts concerning defendant’s conduct are not in dispute. Defendant, an attorney, paid kickbacks to insurance company adjusters through intermediaries out of his contingent fees, for expediting the settlement of his clients’ personal injury claims. The courts below held that the payment of a kickback alone was sufficient to establish prima facie both the fact and the amount of the economic harm the insurance carrier/employer incurred in each of these cases. The Appellate Division based that conclusion on a simple syllogism and arithmetic calculation:
 

 “[B]y accepting a specified settlement and then turning over a percentage of that settlement to the
 
 *110
 
 adjuster, defendant clearly evinced a willingness to settle the claim, at that point in time, for the amount of the settlement minus the amount of the bribe paid to the adjuster.
 

 “Thus, a jury could find that each settlement was necessarily inflated by the amount of the bribe.” (284 AD2d 102, 102 [2001].)
 

 As will be explained, however, the felony commercial bribery legislation requires proof of concrete economic loss suffered by the bribe receiver’s employer, which would not have been incurred in the absence of the corrupt arrangement. Proof that the employer of a bribe receiver paid an amount greater than it would have otherwise paid to consummate a transaction as a result of the bribe would establish the requisite economic harm. But not every kickback, though indicating the payor’s “willingness to settle” for a lower amount, will demonstrate that the settlement would have been less costly had there been no venal agreement. To hold otherwise (as did the lower courts in this case) — that the kickback alone is equivalent to economic harm — would in effect eliminate the economic harm element the Legislature explicitly added to the statute for first degree felony commercial bribing.
 

 I
 

 The legislative history of the 1983 felony commercial bribery statute shows a purpose to require proof of an actual economic injury exceeding $250, suffered by the employer, that would not have occurred absent the bribery of its employee, in order to establish the new economic harm element. The primary purpose of the legislation was to deter through enhanced punishment the kind of commercial bribery that results in monetary or property loss that would be passed on to consumers in the form of higher prices
 
 (see
 
 Letter from Senator James Lack, Senate Sponsor, to Governor’s Counsel, Bill Jacket, L 1983, ch 577, at 21; Attorney General’s Legislative Program,
 
 id.
 
 at 17).
 

 Initially, the requirement of economic loss that would not have been incurred but for the bribery was introduced into the proposed statutory scheme as an affirmative defense
 
 (see
 
 Attorney General’s Legislative Program,
 
 id.
 
 at 16). During the Senate debate on the 1983 amendment, Senator Emanuel Gold asked Senator Lack whether the affirmative defense would be made out by proof that the employer would have paid the very
 
 *111
 
 same price in the transaction, irrespective of the bribing of its employee:
 

 “Am I to understand that if there is a situation of commercial bribery, but it’s a bribery between two competitive interests who may be at the same price and one interest decides that, in order to get the contract, [it] will make a commercial bribe, that
 
 since the employer may not suffer economically since it’s between competing interests at the same price,
 
 that we are creating an affirmative defense?” (Senate debate transcript, at 9759-9760 [emphasis supplied].)
 

 Senator Lack replied, “[i]f it did not cause economic harm, it is an affirmative defense in a commercial bribery situation”
 
 (id.
 
 at 9760). Ultimately, the affirmative defense was dropped in favor of making actual economic harm suffered as a result of the bribery an element of the offense to be established in the People’s case.
 

 It is thus quite clear that the “economic harm to the employer or principal” (Penal Law § 180.03) required for first degree commercial bribing cannot be established by proof of solely intangible, esoteric, or theoretical harms that would not result in additional costs increasing the price of goods or services to consumers. Therefore, the statute is not satisfied by such proof of harm as a breach of the duty of faithful service by the bribed employee; the loss of the employer’s control over dispensing funds caused by the failure of the employee to share information concerning the payor’s willingness to bribe; or the failure of the employee to turn over the bribe payments under a constructive trust or similar theory. No such “deprivations” would have resulted in losses to be passed on to customers.
 

 II
 

 We agree with both the defendant and the People that the kickback/bribery cases under the federal mail fraud statute (18 USC § 1341
 
 et seq.),
 
 decided before a later amendment to that law, are analogous to our first degree commercial bribery cases, and instructive on the issue before us. Like the economic harm requirement for first degree commercial bribing, the mail fraud statute mandated proof of a “scheme * * * for
 
 obtaining money or property
 
 by means of false or fraudulent pretenses” (§ 1341 [emphasis supplied]). Contrary to the People’s reading of the cases, however, the payment of a bribe or kickback was repeat
 
 *112
 
 edly held to be insufficient to satisfy the money or property loss element of mail fraud. Additional proof was required that the employer would have achieved a better deal with the payor of the bribe or kickback, in the form of lower prices or more favorable terms, had there been no corrupt arrangement with the employee.
 

 The seminal mail fraud case involving kickbacks was
 
 McNally v United States
 
 (483 US 350 [1987]). In that case, the defendants controlled the granting of state insurance contracts. They awarded the state’s workers’ compensation insurance contract in return for a kickback from the successful broker’s earned commissions. In
 
 McNally,
 
 the Court rejected the theory that the mere payment of a kickback showed that a deprivation of money or property was involved, holding instead that, under the mail fraud statute, “[t]here are no constructive offenses”
 
 (id.
 
 at 360 [internal quotations and citations omitted]). The state’s loss of the intangible right to faithful service from the bribed official/employee was also found insufficient to satisfy the “money or property” element of section 1341
 
 (id.
 
 at 356). The Court reversed the convictions because there was no proof or even a charge “that
 
 in the absence of the alleged scheme
 
 the Commonwealth
 
 would have paid a lower premium or secured better
 
 insurance”
 
 (id.
 
 at 360 [emphasis supplied]).
 
 [1]
 

 Following
 
 McNally,
 
 the Tenth Circuit sitting en banc in
 
 United States v Shelton
 
 (848 F2d 1485 [1988]) overturned the mail fraud convictions of defendants for “taking ten percent
 
 *113
 
 kickbacks from suppliers who sold goods to the[ir] counties [because] * * * the evidence at trial tended to show that the sales were made at a previously established low price and that the kickbacks were paid out of the suppliers’ profits”
 
 {id.
 
 at 1491). Thus, there was a failure of proof that the scheme involved the taking of money or property — i.e., that “the counties
 
 lost money”
 
 — because of the kickbacks
 
 {id.
 
 [emphasis supplied]).
 

 United States v Johns
 
 (742 F Supp 196 [ED Pa 1990]) is especially instructive. In
 
 Johns,
 
 the defendant was a procurement director for the “Acme” supermarket chain. Just like the People here, the government based its theory of property loss, in part, on the ground that the kickbacks from vendors that defendant received for channeling Acme’s purchases of services and supplies both established and measured Acme’s economic detriment caused by the corrupt arrangement. The court held, however, that the vendors’ payment of kickbacks, despite suggesting their willingness to offer Acme reduced prices, was insufficient. As in
 
 McNally,
 
 the court required an additional showing that without the corrupt arrangement, Acme in fact would have achieved better terms with those vendors. “[T]he government must prove that Acme paid additional money to its vendors as a result of the kickback scheme”
 
 (id.
 
 at 215). That fact, however, was negated by the government’s concession that “the prices charged by the vendors who made kickback payments * * * ‘were not inflated, in comparison to prices they were charging other accounts’”
 
 (id.)
 
 and that “Acme made its buyers aware that
 
 they were not permitted
 
 to violate the Robinson-Patman Act by inducing their vendors to sell to Acme at lower prices, or on terms more favorable, than those offered to Acme’s competition”
 
 (id.
 
 at 216 [emphasis supplied]).
 

 In other mail fraud bribery cases, the federal courts arrived at the same conclusion — that the payment and receipt of a bribe will not in itself establish a governmental or private employer’s loss of money or property. In
 
 United States v Slay
 
 (858 F2d 1310 [8th Cir 1988] [R. Arnold, J.]), the court affirmed the setting aside of a mail fraud conviction based on the bribing of city officials to obtain a cable television franchise. “It strains language to the breaking point to argue, for example, that defendant Slay defrauded the City of St. Louis of money simply by offering money to a city official. The money allegedly offered was properly Slay’s, not the City’s, and Slay’s dishonest use of his own money would not by itself be a cognizable loss to the City for purposes of the mail fraud statutes”
 
 (id.
 
 at 1316 n 4).
 

 
 *114
 
 In
 
 United States v Zauber (857
 
 F2d 137 [3d Cir 1988],
 
 cert denied
 
 489 US 1066 [1989]), a mail fraud conviction against the trustees of a union pension fund was reversed based on the absence of proof that the pension fund lost money or property arising out of the defendants’ acceptance of bribes for steering a $20 million investment loan to a Florida-based mortgage company. The court explained that “[t]he problem with [the government’s] argument is that although the * * * investment may have been unwise, it still returned exactly what the investment agreement called for [and] * * *
 
 the record here does not show that a better deal was available when the trustees made the * * *
 
 investment”
 
 (id.
 
 at 146 [emphasis supplied]).
 

 in
 

 The language and legislative history of our felony commercial bribing statute, and the decisional law on kickbacks and employee bribery under the analogous federal mail fraud statute, thus all militate toward requiring more than payment of a kickback to establish the economic harm element of commercial bribing in the first degree. The payment of the kickback may show that the payor was willing to take less to consummate the transaction. But it does not provide the necessary proof of actual economic harm — that, absent the corrupt arrangement, the employer of the kickback payee
 
 “would
 
 have paid a lower [price] or secured better [terms]”
 
 (McNally v United States,
 
 483 US 350, 360,
 
 supra
 
 [emphasis supplied]).
 

 Judge Leisure perceptively noted this point in
 
 Moll v US Life Tit. Ins. Co. of N.Y.
 
 (710 F Supp 476 [SD NY 1989]).
 
 Moll
 
 was a civil damages suit by real estate purchasers under the Federal Racketeer Influenced and Corrupt Organizations Act (RICO), against the defendant title insurance company. Commission of Penal Law § 180.03 first degree commercial bribing was alleged as the predicate criminal conduct for RICO purposes. The bribing allegedly consisted of kickbacks paid to real estate lawyers to steer their clients to the defendant for title insurance. The uncontested evidence was, however, that while the kickbacks may well have supported the inference of the defendant’s willingness to reduce title insurance premiums by the equivalent amount, no such reduction would have occurred even in the absence of any kickback/referral arrangement, because premiums were uniformly fixed by law
 
 (see
 
 710 F Supp at 481-482). Because the purchasers could not have obtained cheaper title insurance elsewhere, the kickbacks caused them no economic harm. Otherwise “the statute’s eco
 
 *115
 
 nomic harm requirement — specifically added by the Legislature in 1983 — would be rendered superfluous”
 
 {id.
 
 at 482).
 

 With the foregoing in mind, we examine the record to determine whether the People’s proof here sufficiently established economic harm of more than $250 to sustain those convictions. The People’s theory was that although the settlements were concededly fair, defendant’s payment of the kickback evinced his willingness to take less in a bona fide settlement. Thus, the critical question is whether, at the time of the settlement, the corrupt arrangement deprived the insurance companies of the opportunity to take advantage of that willingness.
 

 From our review of the record, we conclude that the People failed to establish a prima facie case of economic harm to support the first degree commercial bribing conviction involving the kickback to the adjuster at Commercial Union. The People’s proof there was that the kickback was paid to expedite settlement before the completion of the normal investigation and verification necessary to assess a claim’s value and enter into meaningful settlement discussions, as described by People’s witness Meredith Furel, a Commercial Union Claims Specialist. Furel testified that any such premature settlement was against company policy and practice, and an act of disloyalty by the adjuster:
 

 “[W]hen you think of a kickback it’s usually to settle a case in a speedy manner and
 
 what the adjustor is doing is taking that file which probably should be going through a discovery procedure which takes a while and putting it above the other claimants,
 
 putting it actually in front of the other cases” (emphasis supplied).
 

 Under company policy, according to Furel, any attempt by defendant to speed up the settlement process on a legitimate, albeit premature, basis would have been rejected. Asked whether a persistent lawyer could achieve a bona fide settlement on an expedited basis, she replied that “if an adjustor is doing his job correctly that attorney can call ten times a day and until that adjustor gets the proper documentation and the proper investigation he is not or should not settle that case.” Finally, Furel confirmed that from her review of the file, it did not appear that the investigation and evaluation process had been completed.
 

 The People failed to establish that an expedited settlement of defendant’s cases with Commercial Union would have
 
 *116
 
 occurred had there been no corrupt arrangement with the adjuster. While the payment of the kickback, as noted by the Appellate Division, may have suggested defendant’s “willingness to settle the claim,
 
 at that point in time,
 
 for the amount of the settlement minus the amount of the bribe” (284 AD2d at 102 [emphasis supplied]), the proof was that an honest adjuster would have rejected any such offer.
 

 Simply put, the People made no showing that Commercial Union would have availed itself of defendant’s “willingness” to accept a lesser settlement by cutting his fee in the amount equivalent to the kickback. The People failed to establish, for example, that at the time the case was disposed of, it was ripe for settlement and that settlement would have been considered by an honest adjuster. Nor did the People establish that the insurance company had sufficient information to justify a settlement at the amount actually paid. Such testimony could have supported an inference that the settlement was inflated, but the People conceded that proof of an inflated settlement was absent. Furthermore, the People never asserted that defendant would have reduced his fee by an amount equivalent to the bribe if the claims had awaited their normal, protracted course for settlement purposes, without a corrupt arrangement.
 

 Thus, as to the Commercial Union count, there was a failure of proof that, without the payment of the kickback to Commercial Union’s adjuster, defendant’s cases in fact would have been disposed of for less than the actual settlement amount— i.e., that Commercial Union would have accepted an honest offer by defendant to settle the cases at a reduced rate in an expedited manner. The absence of proof to support an inference that, had there been no corrupt arrangement to expedite defendant’s cases with Commercial Union, they would have been settled for less is fatal to the People’s proof of economic harm necessary to sustain his conviction of first degree commercial bribery on that count, and the conviction must therefore be reduced to a misdemeanor
 
 (see People v Ryan,
 
 82 NY2d 497, 507;
 
 see also United States v Zauber, supra, 857 F2d
 
 at 140).
 

 We reach a different conclusion with respect to the first degree commercial bribing count involving an Aetna adjuster. There, the proof was that the file was assigned originally to an adjuster who was not party to the kickback scheme. In exchange for a promised kickback, however, a more senior adjuster “pulled” the file and entered into negotiations with defendant’s accomplice. Despite that corrupt arrangement,
 
 *117
 
 those negotiations became protracted before a settlement agreeable to both sides was achieved. Significantly, the evidence established that the file had remained the responsibility of the honest adjuster to whom the case had originally been assigned, and no settlement could be effected without her consent and that of her supervisor. Ultimately, they reviewed the file and then approved the proposed settlement without any knowledge of the kickback.
 

 Affording, as we must, every favorable inference to the People’s evidence, and viewing it in its most favorable light, we conclude that a trier of fact could reasonably find that absent the corrupt arrangement, at the moment defendant’s case with Aetna was actually resolved, a reduced fee arrangement, offered to effect a lesser settlement, would have been accepted by the honest adjusters. In contrast to the proof involving Commercial Union, at the point in time when the settlement with Aetna occurred, honest Aetna adjusters did not reject the inflated settlement offer as premature. Thus, it could have reasonably been inferred by a trier of fact that the kickback arrangement actually deprived Aetna of the opportunity to achieve a disposition of defendant’s case in the amount of the actual settlement but reduced by a sum equivalent to the kickback. We therefore conclude that the conviction of defendant on the first degree commercial bribing count involving Aetna should be affirmed.
 
 [2]
 

 Our conclusion that the evidence was sufficient to show that Aetna incurred economic harm as a result of the kickback to its adjuster similarly supports defendant’s conviction for first degree scheme to defraud. Penal Law § 190.65 (1), in pertinent part, provides that “[a] person is guilty of a scheme to defraud in the first degree when he * * * engages in a scheme constituting a systematic ongoing course of conduct with intent to defraud more than one person or to obtain property from more than one person by false or fraudulent pretenses, representations or promises, and so obtains property with a value in excess of one thousand dollars from one or more such persons.” As explained below, the evidence in this case established a conspiracy to defraud liability insurance companies. Moreover, the kickback of well over $1,000 to the corrupt Aetna adjuster demonstrates that Aetna was deprived
 
 *118
 
 of and defendant concomitantly obtained property in excess of the statutory minimum.
 

 Two remaining issues merit discussion. First, defendant asserts that the trial court abused its discretion by admitting various out-of-court statements — written notes and taped conversations — made by Joel Cohen, an unavailable, fugitive codefendant, under the coconspirator exception to the hearsay rule. Defendant argues that the court should have excluded the statements because the People failed to establish “the requisite conspiratorial connection” between Cohen and defendant.
 

 “A declaration by a coconspirator during the course and in furtherance of the conspiracy is admissible against another coconspirator as an exception to the hearsay rule”
 
 (People v Bac Tran,
 
 80 NY2d 170, 179 [1992]). However, such “evidence may be admitted only upon a showing that a prima facie case of conspiracy has been established”
 
 (id.).
 
 While this “determination * * * must be made without recourse to the declarations sought to be introduced”
 
 (id.),
 
 the testimony of other witnesses or participants may establish a prima facie case
 
 (see People v Sledge,
 
 223 AD2d 922, 925-926,
 
 lv denied
 
 88 NY2d 854 [1996] [testimony of an admitted coconspirator regarding defendant’s involvement established a prima facie case];
 
 People v Gonzalez,
 
 120 AD2d 888, 889 [1986],
 
 lv denied
 
 68 NY2d 770 [prima facie proof of a conspiracy was provided by the independent testimony of other witnesses]).
 

 Here, the proof of conspiracy was overwhelming, clearly satisfying the prima facie requirement for the statements’ admissibility. Three coconspirators admitted their involvement in the kickback scheme and identified Cohen and defendant as also participating. Moreover, ample evidence in the form of the other coconspirators’ business records, such as ledgers reflecting settlement payments from defendant, notes concerning his and Cohen’s participation in settlement of cases where kickbacks were made, computer printouts and checks, further supports the trial court’s determination that the prima facie case of conspiracy had been established.
 

 Also unpersuasive is defendant’s contention that reversal is required because of the People’s violation of
 
 People v Rosario
 
 (9 NY2d 286,
 
 cert denied
 
 368 US 866 [1961]) by not disclosing the minutes of the grand jury testimony of the People’s key witness, coconspirator Edward Quigley, in an unrelated case. Assuming without deciding that this was
 
 Rosario
 
 material,
 
 *119
 
 reversal is not warranted. The
 
 Rosario
 
 objection was raised for the first time in a motion to set aside the verdict brought purportedly under CPL 330.30 (1). The factual assertions concerning this material were outside the record and for that reason could not be considered in a CPL 330.30 (1) motion
 
 (see People v Kronberg,
 
 243 AD2d 132, 135, 152,
 
 lv denied
 
 92 NY2d 880;
 
 People v Herrington,
 
 194 AD2d 379, 380,
 
 lv denied
 
 82 NY2d 755). Therefore, we agree with the Appellate Division that the application was “at best, a de facto CPL 440.10 motion” (284 AD2d at 104). As such, defendant had the burden of demonstrating prejudice
 
 (see People v Machado,
 
 90 NY2d 187, 192) and failed to do so here.
 

 Accordingly, the order of the Appellate Division should be modified by reducing defendant’s conviction of commercial bribing in the first degree on count 113 of the indictment to commercial bribing in the second degree and remitting to Supreme Court for resentencing and, as so modified, affirmed.
 

 Chief Judge Kaye and Judges Smith, Ciparick, Wesley, Rosenblatt and Graffeo concur.
 

 Order modified and case remitted to Supreme Court, New York County, for further proceedings in accordance with the opinion herein and, as so modified, affirmed.
 

 [1]
 

 . Recently, the Second Circuit explained that the 1988 amendment adding 18 USC § 1346 was intended “to expand the definition of ‘scheme or artifice to defraud’ in response to
 
 McNally v. United States
 
 [483 US 350, 360 (1987)]”
 
 (United States v Rybicki,
 
 287 F3d 257, 261 [2002]). The 1988 amendment to the statute added that “a scheme * * * to deprive another of the intangible right of honest services” could constitute the crime
 
 (see
 
 18 USC § 1346). Under nearly identical facts to those presented here, the court — after emphasizing the distinction between the concept of actual (or intended) harm and the reasonably foreseeable harm required to be shown under the mail fraud statute — held in
 
 Rybicki
 
 that the government need only prove “that it was reasonably foreseeable that the fraudulent scheme
 
 could
 
 result in some economic consequence that was more than
 
 de
 
 minimis”
 
 (id.
 
 at 267 [emphasis supplied]). Thus, the court concluded that the jury could find reasonably foreseeable harm if it determined that by the payment of the kickback, the defendant attorneys “intended to obtain favorable treatment from the adjusters at the expense of the insurance companies’
 
 intangible right
 
 to the adjusters’ undivided loyalty and honest services”
 
 (id.
 
 at 266 [emphasis supplied]). Alternatively, the jury could have found that it was reasonably foreseeable that the kickback would provide the adjusters with an incentive not to seek the lowest settlement or to delay settlement, depriving the insurance company of the time value of money
 
 (id.).
 

 [2]
 

 . While defendant adequately preserved his challenge to the sufficiency of the proof in his motion to dismiss, he failed to do so with respect to the court’s jury instruction on first degree commercial bribing.