People v Benton (2025 NY Slip Op 06559)

People v Benton

2025 NY Slip Op 06559

Decided on November 26, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:November 26, 2025

CR-23-2102
[*1]The People of the State of New York, Respondent,
v
Tyler R. Benton, Appellant.

Calendar Date:October 7, 2025

Before:Garry, P.J., Lynch, Ceresia, Fisher and Mackey, JJ.

Hug Law, PLLC, Albany (Matthew C. Hug of counsel), for appellant.
Michael J. Poulin, District Attorney, Johnstown (Chelsea G. Jory of counsel), for respondent.

Ceresia, J.
Appeal from a judgment of the County Court of Fulton County (Tatiana Coffinger, J.), rendered November 3, 2021, upon a verdict convicting defendant of the crimes of sexual abuse in the second degree and endangering the welfare of a child.
Following an incident where defendant, who was 19 years old, allegedly engaged in sexual conduct with the 12-year-old victim in the family locker room at the Fulton County YMCA, defendant was indicted on charges of rape in the first degree, sexual abuse in the second degree and endangering the welfare of a child. At the ensuing jury trial, defendant was acquitted of the rape charge but convicted of the remaining charges. After denying defendant's motion to set aside the verdict, County Court sentenced defendant to two concurrent terms of six years of probation. Defendant appeals.
With respect to defendant's weight of the evidence challenge,[FN1] "we must first view the evidence in a neutral light to determine whether a contrary verdict would have been unreasonable; if not, we defer to the jury's credibility determinations and consider the relative probative force of conflicting testimony and the relative strength of the conflicting inferences that may be drawn therefrom to determine whether the weight of the evidence supports the verdict" (People v Stowe, 240 AD3d 946, 947 [3d Dept 2025] [internal quotation marks and citation omitted]). As relevant here, a person commits sexual abuse in the second degree "when he or she subjects another person to sexual contact and when such other person is . . . [l]ess than [14] years old" (Penal Law § 130.60 [2]). Sexual contact, in turn, is defined as "any touching of the sexual or other intimate parts of a person for the purpose of gratifying sexual desire of either party" (Penal Law § 130.00 [3]). As charged in the indictment, the sexual contact at issue in this case consisted of defendant touching the victim's vagina with his hand. Endangering the welfare of a child is committed, as pertinent here, by "knowingly act[ing] in a manner likely to be injurious to the physical, mental or moral welfare of a child less than [17] years old" (Penal Law § 260.10 [1]).
The victim testified that defendant brought her into a bathroom stall in the family locker room where he kissed her breasts, performed oral sex on her, touched her vagina with his hand and penetrated her vagina with his penis. Although a contrary verdict would not have been unreasonable had the jury disbelieved the victim, who was the only witness to what occurred in the stall (see People v Roberts, 203 AD3d 1465, 1467 [3d Dept 2022]), we nevertheless find that the verdict is supported by the weight of the evidence (see People v Swartz, 235 AD3d 1098, 1101 [3d Dept 2025]). We are unpersuaded by defendant's contention that the verdict cannot stand because the victim's only testimony concerning the touching of her vagina was that defendant did so with his hand when he inserted his penis inside her, yet the jury acquitted him [*2]of rape. It is true that the victim testified that she felt the tip of defendant's penis in her vagina. However, the victim also testified that defendant's hand touched her vagina "[w]hen he was trying to put his penis inside [her] vagina" (emphasis added). Thus, recognizing that the jury was entitled to credit certain aspects of the victim's testimony while rejecting others (see People v Sharlow, 217 AD3d 1120, 1122 [3d Dept 2023], lv denied 40 NY3d 1013 [2023]), the jury could reasonably conclude that the People did not prove beyond a reasonable doubt that defendant's penis actually penetrated the victim's vagina (see Penal Law § 130.00 [former (1)]), such that defendant was not guilty of rape but guilty of sexual abuse.
Defendant next argues that his Antommarchi rights were violated, and we agree. It is well settled that "a defendant has the right to be present at every material stage of a trial" (People v Malloy, 152 AD3d 968, 969 [3d Dept 2017] [internal quotation marks, brackets and citation omitted], lv denied 30 NY3d 981 [2017]; see CPL 260.20; People v Antommarchi, 80 NY2d 247, 250 [1992]), "including sidebar conferences" (People v Burton, 215 AD3d 1054, 1061 [3d Dept 2023] [internal quotation marks and citations omitted], lv denied 40 NY3d 927 [2023]). That said, "[s]uch right may be waived either explicitly or implicitly by [a] defendant. An implicit waiver occurs when a defendant is consciously aware of his right to be present and does not exercise such right . . . . An explicit waiver of defendant's right to be present occurs when a defendant either personally or through his counsel makes an affirmative statement on the record to the effect that he is wa[i]ving such right" (People v Girard, 211 AD3d 148, 153 [1st Dept 2022] [internal citations omitted]). While it is true that the trial court need not engage the defendant in any particular colloquy to obtain a waiver (see People v Velasquez, 1 NY3d 44, 49 [2003]), it is also true that such a waiver must be the product of a "voluntary, knowing and intelligent choice" on the defendant's part (People v Vargas, 88 NY2d 363, 375-376 [1996]).
It is clear from the record that County Court did not at any point advise defendant of his right to be present during sidebar conferences. That being the case, several conferences were held in chambers during jury selection concerning prospective jurors' potential bias or hostility. With the exception of one of these conferences — where defendant clearly participated — the trial transcript is silent as to defendant's presence.[FN2] However, after jury selection concluded but before the trial began, a conference was held with the attorneys in chambers wherein defendant plainly was not present. During this conference, County Court heard arguments from both defense counsel and the prosecutor regarding the admissibility of certain evidence, including testimony that defendant was fired from his job at the YMCA following the incident in question. There was discussion [*3]by the attorneys and the court as to the reason for defendant's termination and whether it was based upon the charged conduct in this case. The court ruled that evidence of defendant's firing would be allowed. It was only after it had issued its ruling that the court acknowledged that defendant was not present, whereupon defense counsel stated, "I can waive his appearance."
Noting that the conference was conducted for the purpose of determining the admissibility of proposed testimony, and further recognizing that defendant presumably had personal knowledge of the circumstances surrounding his firing such that he would have been able to meaningfully participate in the discussion (see People v Simmons, 103 AD3d 1027, 1030 [3d Dept 2013], lv denied 21 NY3d 1009 [2013]), we find that this conference constituted a material stage of the trial at which defendant had the right to be present. In that regard, the transcript of the conference makes apparent that County Court's ultimate ruling on this issue turned on the precise reason for defendant's termination, and defendant was deprived of the opportunity to assist his counsel in advocating against the admission of the subject testimony. Therefore, it cannot be said "that defendant's presence would have been useless, or the benefit but a shadow" (People v Dokes, 79 NY2d 656, 662 [1992] [internal quotation marks and citations omitted]; see People v Roman, 88 NY2d 18, 25-26 [1996]; People v Girard, 211 AD3d at 152; cf. People v Tubbs, 115 AD3d 1009, 1011 [3d Dept 2014]).
With that in mind, defense counsel's attempt to waive defendant's right to be present at the conference was insufficient. Although it is true that counsel can communicate a waiver on behalf of his or her client, there is no indication that defendant was ever made aware of his right to be present at sidebar conferences such that he could knowingly, intelligently and voluntarily waive it. As noted above, County Court never advised defendant of this right, "[n]or is there any evidence that defense counsel explained the right to defendant or any other indication in the record that would permit an inference that defendant was adequately advised of his Antommarchi rights" (People v McAdams, 22 AD3d 885, 886 [3d Dept 2005]). As a result, just as in People v Geddis (173 AD3d 1724, 1726 [4th Dept 2019]), where counsel's mere statement that "I'm okay with [his absence]" was held to be inadequate, counsel's assertion in this case that "I can waive his appearance" failed to convey a waiver that was the product of a voluntary choice by defendant. In any event, even if the purported waiver by counsel had been offered with a sufficient basis, it occurred at the conclusion of the conference, by which point defendant had already been excluded from a material stage (see People v Hoyt, 237 AD3d 1360, 1361-1362 [3d Dept 2025] ["defendant's exclusion from the sidebar (conferences) pre-Antommarchi waiver was error"], lv denied 44 NY3d 982 [2025]).
We are mindful [*4]that defense counsel, in his affirmation in support of defendant's motion to set aside the verdict, made reference to an "informal discussion" with County Court in which he supposedly waived defendant's right to be present at sidebars. These allegations are problematic for multiple reasons. To begin, counsel was again attempting to assert facts that do not appear in the trial transcript, which is improper under CPL 330.30 (1). Even setting that aside, an off-the-record Antommarchi waiver is patently deficient. In addition to that, counsel provided no indication as to when this discussion took place, such that it is impossible to know whether any material stages of the trial had already occurred in defendant's absence. Moreover, in attempting to explain what was said, counsel averred that "since Mr. Benton is autistic[,] I stated that his presence would not be of benefit to me." This statement appears to underscore that this claimed waiver was not made by defendant himself — rather, counsel seemingly made his own determination that defendant had nothing of value to add. We are troubled that this logic, adopted by the court in its decision on the motion ("it is clear that the [d]efendant would not have afforded the defense attorney any meaningful contribution that would affect the outcome of a proceeding"), was apparently intended to apply in blanket fashion to any and all sidebar conferences pertaining to all issues that might arise throughout jury selection and trial. The record is simply devoid of evidence that, because of his autism diagnosis, defendant would have had nothing to contribute to any sidebar discussions.
Based upon the foregoing, we must reverse and remit for a new trial (see People v Dokes, 79 NY2d at 662; People v Geddis, 173 AD3d at 1726). In anticipation thereof, we find it prudent to address defendant's remaining contentions. First, County Court's (Hoye, J.) Sandoval ruling constituted an abuse of discretion (see People v Weinstein, 42 NY3d 439, 469 [2024]). The People sought to question defendant, in the event that he chose to testify, concerning two uncharged matters, and the court granted the motion. Even assuming that these incidents — one involving a cell phone recording in a bathroom and the other concerning defendant's conduct while employed as a lifeguard — impacted his credibility, the prejudicial effect of this evidence far outweighed any probative value (see id. at 468). As such, the People's application should have been denied. Second, we reject defendant's argument that County Court (Coffinger, J.) erred in refusing to instruct the jury that the victim, her mother and stepfather were interested witnesses in this case. The court gave a general instruction that the jury was free to consider whether any witnesses had an interest in the outcome of the case, and the fact that the victim's family had filed a civil lawsuit against defendant and the YMCA was fully explored at trial (see People v Varughese, 21 AD3d 1126, 1127[*5][2d Dept 2005], lv denied 6 NY3d 782 [2006]). Under these circumstances, we find that the charge as given was properly balanced.
Garry, P.J., Lynch, Fisher and Mackey, JJ., concur.
ORDERED that the judgment is reversed, on the law, and matter remitted to the County Court of Fulton County for a new trial on counts 2 and 3 of the indictment.

Footnotes

Footnote 1: Defendant also asserts that the evidence supporting the verdict is legally insufficient, but he has failed to advance any arguments in support of this contention, thereby abandoning it (see People v Rizvi, 126 AD3d 1172, 1174 n [3d Dept 2015], lv denied 25 NY3d 1076 [2015]). In any event, defendant's legal sufficiency argument is unpreserved for our review, given that defendant did not renew his motion for a trial order of dismissal at the close of his case (see People v Marin, 239 AD3d 1028, 1029 [3d Dept 2025]).

Footnote 2: We are aware that defense counsel supplied an attorney affirmation in connection with defendant's motion to set aside the verdict, wherein he represented that defendant was absent from "at least one, if not more, . . . discussions with potential jurors . . . ." Nonetheless, this motion was made under CPL 330.30 (1), which must be based upon "[a]ny ground appearing in the record," such that counsel's affirmation cannot supply the necessary factual predicate for the motion (see People v Giles, 24 NY3d 1066, 1068 [2014];People v Wolf, 98 NY2d 105, 119 [2002]; People v Jackson, 152 AD2d 977, 978 [4th Dept 1989], lv denied 74 NY2d 897 [1989]).